615 A.2d 423

**Janie KELLY, Administratrix of the Estate of Tamar Gist, Deceased and Janie Kelly, in her own right, Appellant,**

v.

**RESOURCE HOUSING OF AMERICA, INC., Geriatric & Medical Centers, Inc., Christopher Stone, Laura Cook, Patricia Perry, Jane Walsh and Ronald T. Meltzer, D.O., Appellees.**

Superior Court of Pennsylvania.

Argued May 12, 1992.

Filed Oct. 22, 1992.

394

Gerald W. Spivak, Philadelphia, for appellant.

Robert Sachs, Philadelphia, for Meltzer, appellee.

Before WIEAND, OLSZEWSKI and KELLY, JJ.

WIEAND, Judge:

On or about May 2, 1989, Janie Kelly caused her mother, Tamar Gist, to be admitted to the Care Pavilion, a nursing home in Philadelphia. Mrs. Gist remained at Care Pavilion until her death on July 27, 1989. Alleging that Care Pavilion had provided inadequate care and had failed to respond to her mother's medical needs, Kelly commenced wrongful death and survival actions as administratrix of her deceased mother's estate and made a claim in her own right for the infliction of emotional distress. Named as defendants were Care Pavilion of Walnut Park Plaza, Inc.; Resource Housing of America (owner, manager, and operator of Care Pavilion); Geriatric &

Medical Centers, Inc.; Total Care Development Corporation; Christopher Stone (administrator of Care Pavilion); Laura Cook (director of nursing at Care Pavilion); Patricia Perry (nurse at Care Pavilion); Jane Walsh (director of quality control at Care Pavilion); and Ronald Meltzer, D.O. (the treating physician). After Kelly had filed a second amended complaint, the defendants filed preliminary objections. All preliminary objections were overruled, except that the trial court dismissed Counts III and IV of the Second Amended Complaint with prejudice. Plaintiff appealed. The trial court filed a memorandum opinion suggesting that the appeal was interlocutory but providing no further insight into the reason for its ruling.

The first count of the Second Amended Complaint, filed by Kelly in her capacity as administratrix, asserted a wrongful death action for pecuniary losses suffered by the decedent's heirs, as well as reimbursement for medical, hospital and nursing home costs, together with funeral and other expenses. The second count was in the nature of a survival action and sought to recover pecuniary losses sustained by the decedent's estate. The third count attempted to state a wrongful death action premised upon an alleged breach of contract. The fourth and final count asserted a cause of action on behalf of Kelly, in her own right, for the alleged intentional, reckless or negligent infliction of emotional distress.

In a trio of cases decided by en banc panels, the Superior Court conducted a comprehensive analysis of the type of orders which will be deemed "final" for appealability purposes. In *Garofolo v. Shah*, 400 Pa.Super. 456, 583 A.2d 1205 (1990), the Court stated:

> Generally, an appeal will lie only from a final order unless otherwise permitted by statute or rule of court. *Pugar v. Greco*, 483 Pa. 68, 72–73, 394 A.2d 542, 544 (1978). An order is interlocutory and not final unless it puts a litigant out of court. *Allesandro v. State Farm Mutual Auto Ins. Co.*, 487 Pa. 274, 281, 409 A.2d 347, 351 (1979); *Giannini v. Foy*, 279 Pa.Super. 553, 556, 421 A.2d 338, 339 (1980). In *Praisner v. Stocker*, 313 Pa.Super. 332, [337–338], 459 A.2d

1255, [1258] (1983), the Court reviewed the applicable law and said:

> As a general rule, an order dismissing some but not all counts of a multi-count complaint is interlocutory and not appealable. *Gordon v. Gordon,* [293 Pa.Super. 491, 499, 439 A.2d 683, 686–687] (1981); *Stengena v. Madden,* 291 Pa.Super. 364, 366, 435 A.2d 1269, 1270 (1981); *Mitchell v. Center City Cadillac,* [287 Pa.Super. 350, 353, 430 A.2d 321, 322 (1981) ]; *Bagshaw v. Vickers,* 286 Pa.Super. 246, 249, 428 A.2d 664, 666 (1981); *Giannini v. Foy, supra* 279 Pa.Super. at 556, 421 A.2d at 339. An examination of the cases so holding discloses that the basis upon which this general rule is founded is that in most instances when one count of a multi-count complaint has been dismissed, the plaintiff is not out of court and is not precluded from presenting the merits of his cause of action. In these cases the courts have adhered to a policy which seeks to avoid piecemeal litigation. Following the general rule, this Court has . . . held that an appeal will not lie from an order granting partial summary judgment. See: *Swift v. Milner,* 296 Pa.Super. 463, 467, 442 A.2d 1144, 1146 (1982); *Rohr v. Keystone Insurance Co.,* 294 Pa.Super. 179, 182, 439 A.2d 809, 811 (1982); *Ruminant Nitrogen Products Co. v. J & M Machinery Co., Inc.,* 294 Pa.Super. 144, 439 A.2d 791 (1982); *Inselberg v. Employers Mutual Companies,* 291 Pa.Super. 406, 435 A.2d 1290 (1981); *Shaefer v. American States Insurance Co.,* [272 Pa.Super. 67, 414 A.2d 672 (1979) ].

*Id.,* 400 Pa.Super. at 458–459, 583 A.2d at 1206.

Fundamental to *Praisner* is the definition of a cause of action. A cause of action has been defined as "the fact or facts which give a person a right to judicial relief; the legal effect of an occurrence in terms of redress to a party to the occurrence. A situation or state of facts which would entitle a party to sustain action and give him the right to seek a judicial remedy in his behalf." Black's Law Dictionary, 5th Ed. (1979). In many cases, a separate cause of action can be distinguished from an alternate theory of recovery by

looking at the relief requested. Alternate theories of recovery are different means for obtaining the same relief for the same harm caused by the same party. A plaintiff cannot recover on all the alternate theories, as this would constitute a duplicative recovery.

On the contrary, a separate cause of action requests different relief for different harms. A party may potentially recover complete relief on each of the separate causes of action. In close cases, additional factors must be considered in determining whether a party has alleged separate causes of action or multiple theories of recovery for a single cause of action.

*Trackers Raceway, Inc. v. Comstock Agency, Inc.*, 400 Pa.Super. 432, 438–439, 583 A.2d 1193, 1196 (1990) (citation omitted).

■ An examination of the Second Amended Complaint in this case discloses clearly that the third count is merely an alternate theory for recovering some or all of the damages alleged in Count I. The third count, being a claim of wrongful death for appellant's mother, seeks to recover only damages previously alleged in the first count because of appellees' "failure to render the quality of care required by their contractual obligations." Because appellant is not "out of court" on her wrongful death action, the trial court's order dismissing the third count is interlocutory, and we will not review it further.

■ Count IV, however, contains a separate cause of action. It asserts a claim by Kelly, in her own right, for the infliction of emotional distress upon herself. It is the only count of the complaint which asserts a separate claim on behalf of Kelly. The order dismissing this cause of action, therefore, is a final order which is immediately appealable. See: *Fink v. Delaware Valley HMO*, 417 Pa.Super. 287, 612 A.2d 485 (1992); *Halliday v. Beltz*, 356 Pa.Super. 375, 514 A.2d 906 (1986); *Cloverleaf Development, Inc. v. Horizon Financial*, 347 Pa.Super. 75, 500 A.2d 163 (1985).

The standard for review of an order sustaining preliminary objections in the nature of a demurrer was recited in *Abadie v. Riddle Memorial Hospital,* 404 Pa.Super. 8, 589 A.2d 1143 (1991), as follows:

> Preliminary objections in the nature of a demurrer admit the truth of the factual averments of the Complaint, but not conclusions of law, as well as all reasonably deducible inferences therefrom. The demurrer must be dismissed if the averments of the Complaint set forth a cause of action which, if proven, would entitle the party to relief. If the Complaint fails to set forth a cause of action, the demurrer must be sustained. *Crivellaro v. Pennsylvania Power & Light Co.,* 341 Pa.Super. 173, 491 A.2d 207 (1985); *Banyas v. Lower Bucks Hospital,* 293 Pa.Super. 122, 437 A.2d 1236 (1981), *citing Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979).

*Id.,* 404 Pa.Super. at 10–11, 589 A.2d at 1144.

The tort of outrageous conduct causing severe emotional distress is outlined at the Restatement (Second) of Torts, § 46, as follows:

**§ 46. Outrageous Conduct Causing Severe Emotional Distress**

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

The gravamen of the tort is outrageous conduct. *Abadie v. Riddle Memorial Hospital, supra,* 404 Pa.Super. at 13, 589 A.2d at 1145. The tort has not been adopted and made a part of the law of Pennsylvania. *Kazatsky v. King David Memorial Park,* 515 Pa. 183, 197, 527 A.2d 988, 995 (1987). As a threshold requirement, in any event, there must be physical injury or harm. *Id.* A plaintiff must allege physical harm to sustain an action for the infliction of emotional distress. *Love v. Cramer,* 414 Pa.Super. 231, 240, 606 A.2d 1175, 1179 (1992). "Given the advanced state of medical science," the Supreme Court explained, "it is unwise and unnecessary to permit recovery to be predicated on an inference based on the

defendant's 'outrageousness' without expert medical confirmation that the plaintiff actually suffered the claimed distress." *Kazatsky v. King David Memorial Park, supra.* See also: *Ford v. Isdaner,* 374 Pa.Super. 40, 542 A.2d 137 (1988).

In the instant case, appellant's claim of emotional distress is based upon her presence in the room while her mother's dressings were removed, revealing a spreading gangrenous infection. She alleged that she was overwhelmed by the odor of decomposing flesh and became upset, nauseous and ill "at the scene." There are no averments that appellant's discomfort continued after she left the room or for a longer period of time. There is no averment of injury other than a momentary nauseous reaction.

■ Even if the decedent received negligent care which causally contributed to Mrs. Gist's suffering and ultimate death, appellees' treatment of Mrs. Gist will not be deemed outrageous conduct which gives rise to a separate cause of action for the intentional, reckless, or negligent infliction of emotional distress upon a daughter who voluntarily chose to be present and observe the treatment being given to her mother. The services by nursing home personnel were being rendered in the normal course of treating and caring for appellant's mother. They were not calculated to induce emotional distress to bystanding members of the patient's family and did not constitute the type of outrageous conduct referred to by the Restatement. If the decedent's treating physician or the nursing home personnel were negligent in their treatment of appellant's mother, the law provides a remedy. That conduct, however, does not give rise to a separate cause of action in favor of members of the patient's family for outrageous conduct.

The appeal from the order dismissing the third count of the Second Amended Complaint is quashed. The order dismissing the fourth count of the Second Amended Complaint is affirmed.

OLSZEWSKI, J., files a concurring opinion.

OLSZEWSKI, Judge, concurring.

I agree with the majority's decision to quash the appeal from the trial court's order dismissing Count III of the complaint. I, however, concur only in the result of the majority's decision to affirm the dismissal of Count IV.

As the majority noted, the order sustaining the demurrer and dismissing Count IV is a final and appealable order. *See Trackers Raceway, Inc. v. Comstock Agency, Inc.*, 400 Pa.Super. 432, 438–439, 583 A.2d 1193, 1196 (1990).

Appellant's Count IV is a claim for infliction of emotional distress.[1] I agree with the majority's reasoning and legal support for affirming the dismissal of the claim of intentional infliction of emotional distress. However, I think the majority discussion of emotional distress is inadequate because it commingles intentional and negligent concepts. Therefore, I am writing this concurrence.

A cause of action for negligent infliction of emotional distress will lie if three factors are present:

(1) plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it;

(2) the shock resulted from a direct emotional impact on plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; and

(3) plaintiff and the victim were closely related as contrasted with an absence of any relationship or the presence of only a distant relationship.

*Love v. Cramer*, 414 Pa.Super. 231, 233, 606 A.2d 1175, 1177 (1992) (citations omitted). Additionally, Pennsylvania law requires that plaintiff allege a physical harm in order to sustain an action for negligent infliction of emotional distress. *Id.* (citing *Mazzagatti v. Everingham by Everingham*, 512 Pa.

---

1. Appellant lumps her claims for intentional and negligent infliction of emotional distress into one count. Since these are different causes of action, she should have pled them separately. Pa.R.C.P. § 1020, 42 Pa.C.S.A. Despite appellant's failure to do so, the majority addresses both claims and so will I.

266, 516 A.2d 672 (1986)). The law, however, does not specify the amount of harm that must be alleged. *Id.*

Similar to the case at bar, the plaintiff in *Love* brought an action for negligent infliction of emotional distress against her deceased mother's physician. Plaintiff alleged that the doctor's negligence led to her mother's death. The day that her mother died, plaintiff had been resting beside her mother's side and was forced to witness the death. Plaintiff claimed that as a result she suffered ongoing depression, nightmares, stress and anxiety, all resulting in a need for psychological treatment.

The *Love* Court noted, without speaking to the ultimate merits of the case, that plaintiff's "observance of the lack of medical care, along with her observance of her mother's heart attack is enough to sustain her claim for negligent infliction of emotional stress." *Id.* 414 Pa.Super. at 236, 606 A.2d at 1178. We did not find the passage of time between the doctor's alleged negligence and the time of the actual injury to be a handicap in plaintiff's case. In addition, this Court concluded that plaintiff had alleged sufficient physical manifestations of emotional suffering to survive a demurrer. *Id.,* 414 Pa.Super. at 238, 606 A.2d at 1179. As a result, we reversed the trial court's order which sustained the demurrer.

Similarly, appellant claims that the nursing home's negligence caused her mother to suffer and eventually die from a gangrenous infection. Appellant witnessed this spreading infection because she was present when her mother's dressings were removed. She alleged that this caused her to become "extremely upset, nauseous and violently ill at the scene." (Second amended complaint at para. 55).

Following *Love,* I believe that appellant's observance of her mother's spreading infection would be sufficient to sustain a cause of action for negligent infliction of emotional distress. A crucial variation from *Love,* however, is that appellant here did not sufficiently allege a physical injury. Plaintiff Love asserted that she suffered continuing depression, nightmares, stress and anxiety. In contrast, appellant only claimed to have become upset, ill and nauseated at the scene of the unwrap-

ping. Her injuries are not of the same magnitude that prompted this Court's decision in *Love*. *See Id.* For this reason, the order sustaining the demurrer should be affirmed.

In my opinion, it is imperative to distinguish the torts of intentional and negligent infliction of emotional distress and differentiate the ways that appellant respectfully failed to satisfy the requirements of each. Therefore, I concur only in the majority's result.