625 A.2d 668

**Mark JOHNSON, Glenn Johnson and Christine Johnson**

v.

**Father Robert CAPARELLI, Saint Vincent DePaul, R. C. Church and Diocese of Scranton.**

**Appeal of Glenn JOHNSON and Christine Johnson.**

Superior Court of Pennsylvania.

Argued Jan. 27, 1993.

Filed May 13, 1993.

Charles Kannebecker, Dingmans Ferry, for appellants.

Stephen A. McBride, Milford, for appellees.

Before McEWEN, POPOVICH and BROSKY, JJ.

BROSKY, Judge.

This is an appeal from the order of the lower court which granted appellee's preliminary objections in the nature of a demurrer to counts VI and VII of appellants' amended complaint, relating to appellants' claims for intentional infliction of emotional distress, and directed these counts to be stricken. Appellants present the following issues for review: (1) whether the tort of intentional infliction of emotional distress is a cognizable cause of action in Pennsylvania; and (2) whether Pennsylvania recognizes a cause of action for intentional infliction of emotional distress where the tortfeasor's acts were directed at a third-party and the parties alleging such distress were not present when the outrageous acts were committed. For the reasons set forth below, we affirm the order of the lower court.

Before addressing the issues raised by appellants, we will briefly recount the relevant facts of this case. Glenn, Christine and Mark Johnson were parishioners of the Saint Vincent DePaul Roman Catholic Church, which is located within the Diocese of Scranton.[1] In the course of their worship, the Johnson family became acquainted with appellee, Father Robert Caparelli, a priest at the church. Mark Johnson subsequently served as an altar boy at Saint Vincent DePaul and was also hired by Father Caparelli to perform occasional groundskeeping and maintenance at the church. Father Caparelli developed a close relationship with the Johnson family and secured Mr. and Mrs. Johnson's permission to take Mark

---

1. Appellants, Glenn and Christine Johnson, are the parents of Mark Johnson, who was a minor at the time the tortious acts allegedly occurred.

to the movies, for food and on short trips. Unbeknownst to Mr. and Mrs. Johnson, Father Caparelli allegedly engaged in various sexual acts with Mark Johnson from approximately September 1985 through June 1986. Mr. and Mrs. Johnson apparently did not learn of these incidents until 1991, at which time they instituted suit against Father Caparelli, Saint Vincent DePaul Church and the Diocese of Scranton.[2] Father Caparelli responded by filing preliminary objections to appellant's complaint which, *inter alia*, challenged the counts pertaining to Glenn and Christine Johnson's claims for intentional infliction of emotional distress. Before the trial court could rule on these objections, appellants filed an amended complaint in March, 1992. Father Caparelli again filed preliminary objections to the counts relating to Mr. and Mrs. Johnson's actions for intentional infliction of emotional distress. On June 12, 1992, the trial court sustained the objections and dismissed these counts from the complaint.[3] This timely appeal followed.

■ Although not addressed by either of the parties, we must first ascertain whether the order is properly appealable at this stage of the proceedings. *Motheral v. Burkhart,* 400 Pa.Super. 408, 414, 583 A.2d 1180, 1184 (1990) (*en banc*) (providing that because the question of appealability concerns the jurisdiction of the appellate court, we may raise such an issue *sua sponte* even where the parties have not done so). The order in this case, which dismissed two counts of a multiple count complaint involving multiple plaintiffs and defendants, is interlocutory and unappealable pursuant to the recent amendments to Rule 341 of the Pennsylvania Rules of Appellate Procedure. *See* Pa.R.A.P., Rule 341(b)(1), 42 Pa.

2. Neither the diocese nor the church filed preliminary objections to the complaint. Further, the dismissed counts of the complaint which form the basis of this appeal pertained solely to Father Caparelli. The church and the diocese thus were not affected by the trial court's order and have not participated in this appeal.

3. After the objections were sustained, the parties entered into a stipulation relating to other counts of the complaint in which the parties agreed to the dismissal of other counts. As a result, a second amended complaint has been filed. The second amended complaint is not properly before us at this time.

C.S.A. (defining a final order as one which disposes of all claims or of all parties) and the Note thereto (providing that an order dismissing one of several causes of action pleaded in a complaint but leaving pending other causes of action is no longer appealable as of right unless the trial court makes an express determination that an immediate appeal would facilitate resolution of the entire case and expressly enters a final order pursuant to Rule 341(c)). However, the amendments to Rule 341 are only applicable to proceedings which originally commenced in a court after July 6, 1992, the effective date of the rule. *See* 210 Pa.Code Rule 341 (Order, dated May 6, 1992, by Chief Justice Nix following the text of prior Rule 341 and preceding the text of amended Rule 341). The rule, as amended, is inapplicable here because this action was originally commenced on December 26, 1991 before the effective date of the amendments. We must therefore turn elsewhere for guidance in ascertaining whether the order is appealable.

With regard to this issue, this court has stated:

As a general rule, an order dismissing one but not all counts of a multi-count complaint is interlocutory and not appealable. However, this court has recognized that if the dismissed count states a cause of action that is separate and distinct from the remaining count, the order dismissing that count is final and appealable; if the dismissed count merely states an alternate theory of recovery, the order dismissing it is interlocutory and not appealable. Thus, a pivotal factor to consider in determining whether an order is final is whether the order has put the aggrieved plaintiff out of court on all theories of recovery asserted against a given defendant for a given loss.

*Fink v. Delaware Valley HMO,* 417 Pa.Super. 287, 292, 612 A.2d 485, 488 (1992) (citations and quotation marks omitted). *Accord Kelly v. Resource Housing of America, Inc.,* 419 Pa.Super. 393, 395–400, 615 A.2d 423, 424–426 (1992) and *Motheral v. Burkhart,* 400 Pa.Super. at 415–416, 583 A.2d at 1184–1185. In applying these principles to claims for intentional infliction of emotional distress, this court has found orders dismissing such actions to be final and appealable.

*See, e.g., Kelly v. Resource Housing of America, Inc.,* 419 Pa.Super. at 397–400, 615 A.2d at 425–426 (order dismissing a claim for intentional infliction of emotional distress was appealable where it was the only claim asserted by the plaintiff, in her own right, against the defendant) and *Fink v. Delaware Valley HMO,* 417 Pa.Super. at 292, 612 A.2d at 488 (order dismissing a claim for intentional infliction of emotional distress was appealable because it was a separate cause of action from the remaining count relating to tortious interference with prospective contractual relations). *See also Motheral v. Burkhart,* 400 Pa.Super. at 423–424, 583 A.2d at 1187–1189 (intentional infliction of emotional distress claim against one defendant was not appealable as it sought recovery for the same loss that was the subject of a remaining count; however, a separate claim for intentional infliction of emotional distress that was asserted against a different defendant was appealable where all of the counts against that defendant had been dismissed).

In this case, we observe that the causes of action contained in counts VI an VII of the complaint form the sole basis of recovery asserted by Glenn and Christine Johnson against appellee.[4] Under these circumstances, the order dismissing these counts is final and appealable. *See Kelly v. Resource Housing of America, Inc., Fink v. Delaware Valley HMO* and *Motheral v. Burkhart, supra.* We will therefore proceed to consider the merits of this appeal.

The scope of review applicable to a grant of preliminary objections in the nature of a demurrer has been enunciated by our Supreme Court as follows:

All material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for the purpose of this review. The question presented by the demurrer is whether, on the facts averred, the law

---

4. Although Glenn and Christine Johnson also sought recovery from appellee in counts III, IV, IX and X of the complaint, the record contains a stipulation of counsel which indicates that these four counts were dismissed with prejudice. *See* Stipulation of Counsel, filed 9/20/92. Consequently, the dismissed counts cannot be construed as an alternate theory of recovery.

says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it. *Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnick,* 526 Pa. 541, 547, 587 A.2d 1346, 1349 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 196, 116 L.Ed.2d 156 (1991) (citations omitted). *Accord Kelly v. Resource Housing of America, Inc.,* 419 Pa.Super. at 399–400, 615 A.2d at 426 (1992), *quoting Abadie v. Riddle Memorial Hospital,* 404 Pa.Super. 8, 10–11, 589 A.2d 1143, 1144 (1991); *Love v. Cramer,* 414 Pa.Super. 231, 233, 606 A.2d 1175, 1177 (1992); *Motheral v. Burkhart,* 400 Pa.Super. at 424–425, 583 A.2d at 1189; *Field v. Philadelphia Electric Company,* 388 Pa.Super. 400, 405, 565 A.2d 1170, 1172 (1989). We will evaluate appellants' claims and the decision of the lower court in accordance with this standard. Because the analysis of the questions presented by appellants is intertwined, these issues will be discussed together.

Appellants seek to hold appellee liable for the tort of intentional infliction of emotional distress. This tort, as defined in § 46 of the Restatement of Torts (Second) (1965), has been acknowledged by the Pennsylvania appellate courts, but has not been specifically adopted by our Supreme Court. *See, e.g., Kazatsky v. King David Memorial Park,* 515 Pa. 183, 185, 527 A.2d 988, 988 (1987); *Hackney v. Woodring,* 424 Pa.Super. 96, —— – ——, 622 A.2d 286, 288–289 (1993) (dissenting opinion by Tamilia, J.); *Kelly v. Resource Housing of America, Inc.,* 419 Pa.Super. at 399–400, 615 A.2d at 426; *Strain v. Ferroni,* 405 Pa.Super. 349, 359, 592 A.2d 698, 703 (1991); *Baker v. Morjon, Inc.,* 393 Pa.Super. 409, 413–414, 574 A.2d 676, 678 (1990); *Ford v. Isdaner,* 374 Pa.Super. 40, 44, 542 A.2d 137, 139 (1988), *allocatur denied,* 520 Pa. 617, 554 A.2d 509 (1988); *Daughen v. Fox,* 372 Pa.Super. 405, 411–412, 539 A.2d 858, 861 (1988), *allocatur denied,* 520 Pa. 605, 553 A.2d 967 (1988). *But see Field v. Philadelphia Electric Company,* 388 Pa.Super. at 429, 565 A.2d at 1184 (distinguishing *Kazatsky* on a procedural basis and proceeding to recognize a cause of action under § 46). *See also Hackney v. Woodring,* 424

Pa.Super. at ——, 622 A.2d at 288–289 (majority opinion by Johnson, J.); *Abadie v. Riddle Memorial Hospital,* 404 Pa.Super. at 13–14, 589 A.2d at 1146; *Motheral v. Burkhart,* 400 Pa.Super. at 422–423, 583 A.2d at 1188 (all of which cite *Field* for the proposition that § 46 has been recognized in Pennsylvania). It is unnecessary for us to contribute to the confusion and conflict in the law by deciding whether to adopt § 46 of the Restatement in this case because we conclude that appellants have failed to establish the requisite elements of this tort.

The tort of outrageous conduct causing severe emotional distress is outlined in § 46 of the Restatement (Second) of Torts as follows:

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress.

(a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or

(b) to any other person who is present at the time, if such distress results in bodily harm.

In reviewing the above language, it can be seen that § 46(1) applies to situations in which a person suffers severe emotional distress as a result of outrageous conduct which is directed at that individual. By way of contrast, subsection (2) applies to individuals who suffer severe emotional distress as a result of outrageous conduct which is directed at a third-party. As applied here, counts VI and VII respectively allege that Glenn and Christine Johnson sustained severe emotional distress as a result of the sexual acts perpetrated by appellee on their son. Consequently, the facts of this case fall squarely within § 46(2) rather than § 46(1) of the Restatement.

To establish a cause of action under subsection (2), appellants must demonstrate: (1) outrageous conduct by the actor and (2) that they were present at the time the conduct occurred. The Supreme Court has further added the requirement of physical injury or harm in the event that § 46 is to be adopted. *See Kazatsky v. King David Memorial Park,* 515 Pa. at 197, 527 A.2d at 995. With regard to the element of outrageousness, it is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery. *Hackney v. Woodring,* 424 Pa.Super. at ——, 622 A.2d at 288–289 (majority opinion), *citing Motheral v. Burkhart,* 400 Pa.Super. at 423, 583 A.2d at 1188. *Accord Abadie v. Riddle Memorial Hospital,* 404 Pa.Super. at 13–14, 589 A.2d at 1146; *Field v. Philadelphia Electric Company,* 388 Pa.Super. at 427–428, 565 A.2d at 1183–1184; *Ford v. Isdaner,* 374 Pa.Super. at 44, 542 A.2d at 139; *Daughen v. Fox,* 372 Pa.Super. at 412, 539 A.2d at 861. Conduct which is extreme and outrageous is defined as conduct which is

> so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Comment d, Restatement (Second) of Torts § 46. Appellee's conduct towards Mark Johnson, if accepted as true, may reasonably be regarded as so extreme and outrageous as to permit recovery. *See Hackney v. Woodring, supra* (majority opinion) (in which the defendant's repeated intimidation, harassment and sexual abuse of the victim were found to be outrageous). Appellants have also established the third element since their complaint contains the requisite allegations of physical harm. *See* Amended Complaint at count VI, paragraph 53 and count VII, paragraph 57 (averring that Glenn and Christine Johnson have suffered physical harm, including

but not limited to headaches, upset stomach, involuntary muscle tension, physical pain and nervousness).

■ Although appellants have adequately demonstrated the elements of physical harm and outrageous conduct, their cause of action nevertheless fails because the second element, *i.e.*, their presence at the time the acts were committed, has not been met. It is obvious from a reading of the numerous allegations in their complaint that neither Mr. Johnson nor Mrs. Johnson were present when their son was subjected to the alleged sexual abuse by appellee. Although appellants acknowledge their lack of observation of these acts, they urge us to reject this element and find that their presence was not required.

Notwithstanding appellants' arguments to the contrary, this court has repeatedly indicated that the individual suffering the distress must be present when the outrageous conduct is directed at a third person. This we believe conforms to the present law in the Commonwealth. *See Baker v. Morjon, Inc.,* 393 Pa.Super. at 415, 574 A.2d at 679; *Daughen v. Fox,* 372 Pa.Super. at 413 n. 2, 539 A.2d at 861–862 n. 2; *Stoddard v. Davidson,* 355 Pa.Super. 262, 268, 513 A.2d 419, 423 (1986). The majority of our sister states have likewise adopted either the element of presence or a modified version of this requirement. *See, e.g., Christensen v. Superior Court of Los Angeles,* 54 Cal.3d 868, 903, 2 Cal.Rptr.2d 79, 100, 820 P.2d 181, 202 (1992); *Homer v. Long,* 90 Md.App. 1, 13–15, 599 A.2d 1193, 1198–1200 (1992), *cert. denied,* 326 Md. 177, 604 A.2d 444 (1992); *Maguire v. State of Montana,* 254 Mont. 178, 187–88, 835 P.2d 755, 761 (1992); *Carlson v. Chain,* 490 N.W.2d 469, 473–474 (Neb.Ct.App.1992); *M.M. v. M.P.S.,* 556 So.2d 1140, 1140–1141 (Fla.App.1989), *review denied,* 569 So.2d 1279 (Fla. 1990); *H.L.O. by L.E.O. v. Hossle,* 381 N.W.2d 641, 644 (Iowa 1986); *Lund v. Caple,* 100 Wash.2d 739, 741–742, 675 P.2d 226, 228–229 (1984); *Lauver v. Cornelius,* 85 A.D.2d 866, 867, 446 N.Y.S.2d 456, 457 (1981); *Calliari v. Sugar,* 180 N.J.Super. 423, 428–429 435 A.2d 139, 142 (1980); *Miller v. Cook,* 87 Mich.App. 6, 11, 273 N.W.2d 567, 569–570 (1978) (all of which denied recovery for emotional distress where the plaintiffs

were not present at the time the alleged conduct was directed at their family members or other third parties). *See also Father A v. Moran,* 469 N.W.2d 503, 506 (Minn.App.1991) (disallowing recovery for emotional distress because the parents were not within the zone of danger when the sexual assaults occurred); *Nancy P. v. D'Amato,* 401 Mass. 516, 522, 517 N.E.2d 824, 828 (1988) (denying recovery for emotional distress where the plaintiffs did not have substantially contemporaneous knowledge of the outrageous conduct that was inflicted on the third-party); *Briggs v. Rosenthal,* 73 N.C.App. 672, 678, 327 S.E.2d 308, 312 (1985), *cert. denied,* 314 N.C. 114, 332 S.E.2d 479 (1985) (disallowing recovery for emotional distress because the alleged conduct was not directed at the parents); *Courtney v. Courtney,* 186 W.Va. 597, 601, 603, 413 S.E.2d 418, 422, 424 (1991) (allowing recovery for emotional distress where the individual observed the outrageous conduct inflicted on the third-party); *Croft by Croft v. Wicker,* 737 P.2d 789, 792–793 (Alaska 1987) (permitting recovery where the parents were in close proximity to the child at the time the alleged sexual acts were committed and observed the child's distress immediately thereafter). *But see Delia S. v. Torres,* 134 Cal.App.3d 471, 484, 184 Cal.Rptr. 787, 795 (1982) (permitting a husband to maintain a cause of action for the intentional infliction of emotional distress resulting from the rape of his wife even though he did not witness the incident); *Bishop v. Callais,* 533 So.2d 121 (La.Ct.App.1988), *cert. denied,* 536 So.2d 1214 (La.1989) (allowing wife to maintain a cause of action for emotional distress sustained as a result of conduct directed at her husband even though she did not witness the incident); *Schurk v. Christensen,* 80 Wash.2d 652, 657, 497 P.2d 937, 940 (1972) (allowing recovery even though the parents were not present when the babysitter sexually abused their child).[5] The comments to the Restate-

---

5. The decisions allowing recovery despite the lack of presence are not instructive as none of these cases cited or discussed the Restatement. Rather, these decisions treated the outrageous conduct as if it had been directed at the plaintiffs rather than the third-parties due to the husband-wife or parent-child relationships. Consequently, the element of presence was not required. Moreover, the continued precedential authority of *Delia S.* and *Schurk* is questionable in light of subsequent

ment justify the requirement of presence by the practical necessity of drawing the line somewhere. Comment 1, Restatement (Second of Torts) § 46. Legal commentators provide similar reasoning and explain:

> Ordinarily, recovery in ... cases [where the outrageous conduct is directed at a third party] is limited to plaintiffs who are not only present at the time, but are known by the defendant to be present, so that the mental effect can reasonably be anticipated by the defendant. The distinction between the wife who sees her husband shot down before her eyes, and the one who hears about it five minutes later, may be a highly artificial one; but an argument in justification is the obvious necessity of drawing a line somewhere short of the widow who learns of the decease ten years afterward, when the genuineness and gravity of her distress may very reasonably be doubted.

Prosser and Keeton, *The Law of Torts* § 12, at 65–66 (5th ed. 1984). We find the reasoning set forth in the relevant commentary and the cases in which presence is required to be persuasive. Presence is a crucial element of the tort because an individual who witnesses outrageous or shocking conduct directed at a third-party has no time in which to prepare himself/herself for the immediate emotional impact of such conduct. Moreover, the actor can reasonably be expected to know of the emotional effect which his or her conduct is likely to produce where the person is present. By way of comparison, the emotional effects are generally lessened where the individual learns of the outrageous conduct long after its occurrence and by means other than through his or her own personal observations. Presence is therefore an essential

changes in the law. *Delia S.* was expressly disapproved by the California Supreme Court. *See Christensen v. Superior Court of Los Angeles*, 54 Cal.3d 868, 905 n. 28, 2 Cal.Rptr.2d 79, 102 n. 28, 820 P.2d 181, 204 n. 28. With regard to *Schurk*, the Washington Supreme Court has adopted § 46(2) of the Restatement and has denied recovery for emotional distress where the plaintiff was not present at the time of the outrageous conduct. *See Lund v. Caple*, 100 Wash.2d 739, 742, 675 P.2d 226, 228–229 (1984).

416

element which must be established to successfully set forth a cause of action for intentional infliction of emotional distress.

Because appellants were not present when the alleged sexual conduct occurred, they have failed to set forth a cause of action for intentional infliction of emotional distress. Under these circumstances, the trial court properly granted the demurrer and dismissed the counts relating to this tort. We accordingly affirm the order of the lower court.

Order affirmed.

McEWEN, J., files a dissenting opinion.

McEWEN, Judge, dissenting:

The majority opinion provides a most perceptive expression of view, but I am obliged, nonetheless, to dissent, for I am of the mind that the claim of the parents for intentional infliction of emotional distress cannot properly be dismissed without affording the parents an opportunity to amend their complaint. *See: Pittsburgh Coal and Coke Inc. v. Cuteri*, 404 Pa.Super. 298, 590 A.2d 790 (1991). Moreover, I am convinced that this is **THE** case to which the caveat to Comment L of Section 46 of the Restatement (Second) of Torts is addressed, thus obviating, in view of the outrageous and despicable conduct of defendant Caparelli, the requirement of presence.[1]

1. The Comment recites:
   *Conduct directed at a third person.* Where the extreme and outrageous conduct is directed at a third person, as where, for example, a husband is murdered in the presence of his wife, the actor may know that it is substantially certain, or at least highly probable, that it will cause severe emotional distress to the plaintiff. In such cases the rule of this Section applies. The cases thus far decided, however, have limited such liability to plaintiffs who were present at the time, as distinguished from those who discover later what has occurred. The limitation may be justified by the practical necessity of drawing the line somewhere, since the number of persons who may suffer emotional distress at the news of an assassination of the President is virtually unlimited, and the distress of a woman who is informed of her husband's murder ten years afterward may lack the guarantee of genuineness which her presence on the spot would afford. *The Caveat is intended, however, to leave open the possibility of situations in which presence at the time may not be required.* (emphasis supplied).

The vile depravity which the complaint asserts defendant Caparelli practiced upon young Mark has, to be sure, subjected young Mark to a lifetime of tortured existence, and—it is alleged in the amended complaint soon to be filed in the trial court—has hurled young Mark into the devil's abyss of AIDS.[2] When defendant Caparelli imposed his perversion upon the child, and thereby summoned the angel of living death, no one will doubt that he scorched the mind and seared the soul of each of the parents. As the majority opines, "the facts of this case fall squarely within [Restatement] 646(2)" and its requirement of extreme and outrageous conduct.[3]

The issue is, however, whether the parents meet all of the prerequisites to a recovery for intentional infliction of emotional distress. These prerequisites, as quite aptly delineated by the majority, are:

That defendant Caparelli has engaged in extreme and outrageous conduct,

That the extreme and outrageous conduct has caused the parents severe emotional distress which resulted in bodily harm, and

That the parents have been present at the time of the commission of the extreme and outrageous conduct.

The majority has determined that the parents have met two of the three prerequisites, namely, the conduct of defendant Caparelli toward their son was extreme and outrageous, and the emotional distress they have suffered includes bodily harm. The majority concludes, however, that the parents

2. Since discovery has not commenced, there is no evidence to enable argument that officials of the defendant Archdiocese were aware of and concealed earlier such conduct by defendant Caparelli thereby enabling him to maintain pursuit of the perversion by which he consumed young Mark as prey.

3. Even an abandoned sinner is unable to urge mitigation of the sentence pronounced by the New Testament:
It were better for him that a millstone were hanged about his neck, and he be cast into the sea, than that he should offend one of these little ones.
Luke XVII:2.

have not stated a cause of action for intentional infliction of emotional distress due to the absence of an allegation that the outrageous acts were committed in their presence. It is my disagreement with this determination that causes my departure from the company of the majority and the conclusion that the preliminary objections in the form of a demurrer should have been denied and the parents enabled to proceed with their cause of action for intentional infliction of emotional distress.

I so conclude since the loathsome degeneracy which defendant Caparelli practiced upon the body of young Mark was but the culmination of his depravity since he commenced the pursuit of young Mark long before the culmination, specifically, when by word and deed over a period of time he deceived the parents into believing that he was a man of Holy Orders, a trustworthy confidant, and a kindly confessor. When young Mark, too terrified to tell of his fear of the pervert, expressed a reluctance to accompany defendant Caparelli, the parents—their faith defiled, their trust betrayed, because they too had been seduced and victimized—admonished him into continuing with the companionship of Father Caparelli. As a result, I am of the mind that the parents were more than present since defendant had made of the parents not simply witness but had impelled them into the role of accomplice.[4]

The assertion will be made that it should not be presumed that, once defendant Caparelli met the parents, his interaction with them was solely to entice young Mark, for certainly some time elapsed between his first contact with them and the physical onset of his perversion with young Mark. Even if the validity of this contention is accepted, *arguendo*, once the loathsome perversion began, encounters and interaction with the parents had a sole, single despised purpose—the preserva-

4. It might even be argued that a clergyman who, for so vile and despicable a purpose, enters upon a course of deceit of members of his flock—in this instance, the parents—engages in conduct so extreme and outrageous that the deceit of the parents itself affords basis for an action by the parents for intentional infliction of emotional distress.

tion of the trust of the parents so as to enable him to consume the body of the son he coveted. Surely, the parents thereby were more than witnesses. Certainly the man of God, who became the disciple of the devil, made the parents his accessories for, when the parents forced Mark to associate with defendant Caparelli, they aided him in his repugnant errands, they abetted him in his repulsive mission, they served to defile their son and to infect and destroy his body. No punishment can be sufficiently barbarous for defendant Caparelli, nor can the wealth of ancient kings be sufficient recompense for the child and each parent.[5] The law is clearly inadequate to the task of either retribution or recompense, but the law must not be so inept as to deny that the hell defendant Caparelli has brought to earth for these parents affords to them a cause of action.

---

**5.** Since social commentary may distract from proposal of jurisprudential revision, particularly when submitted from the intermediate rank and especially when in dissent, expression of personal conviction must be but terse. So mindful, we observe that while the crimes of defendant Caparelli have thrust the victim's family into an existence of torture which cries for vengeance, defendant Caparelli has, as well, impugned the legions of women and men who presently labor selflessly to serve mankind, as did, through the centuries, their dedicated, even saintly, predecessors. Defendant Caparelli has, moreover, provided the bigots through the land with cause for celebration, as well as abundant feast to the creedless members of the media who condemn the institutions and traditions and beliefs of the people of the land.