**Kimberly A. LANE, and Charlotte E. McQueen, individually and on behalf of her two minor children, Kareem Jamal and Jahlear Harris,**

v.

**John COLE and Rose Cole.**

**No. CIV. A. 99–2463.**

United States District Court, E.D. Pennsylvania.

March 22, 2000.

Marinda Van Dalen, Philadelphia, PA, for plaintiffs.

Ronda K. Kiser, Thomas C. DeLorenzo, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, PA, for defendants.

## MEMORANDUM

WALDMAN, District Judge.

Plaintiffs assert federal claims against defendants under the Fair Housing Act, 42

U.S.C. § 3601 *et seq.* Plaintiffs Lane and McQueen also assert state law claims for intentional infliction of emotional distress against defendants, and plaintiff Lane asserts state law claims for assault and battery against defendant John Cole. Presently before the court is defendants' Motion to Dismiss Plaintiffs' First Amended Complaint.

Defendants seek dismissal of the Fair Housing Act claims of plaintiff McQueen and on behalf of Jamal and Harris, and dismissal of the intentional infliction of emotional distress claims of plaintiffs Lane and McQueen. Defendants contend that only plaintiff Lane has standing to maintain a Fair Housing Act claim and that the conduct attributed to defendants is not sufficiently outrageous to state a claim for intentional infliction of emotional distress.

In assessing a motion to dismiss, the court assumes to be true all of the factual allegations in the complaint and the reasonable inferences therefrom, and views them in the light most favorable to the nonmovants. *See Rocks v. Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989). A claim should be dismissed only if it appears beyond doubt from the face of the complaint that a plaintiff cannot prove any set of facts which would entitle her to relief. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Robb v. Philadelphia,* 733 F.2d 286, 290 (3d Cir.1984). In their amended complaint, plaintiffs make the following factual allegations.

In March 1999, plaintiff Lane leased an apartment for an unspecified period in a building in Philadelphia which was owned and managed by defendants. The building was all white and the surrounding Port Richmond neighborhood was virtually all white. Ms. Lane moved in on March 17, 1999. Ms. Lane was visited on "multiple occasions" over the next two weeks by her friend Charlotte McQueen and Ms. McQueen's two children, five year old Kareem Jamal and three year old Jahlear Harris. On "some" of these occasions, Ms. McQueen and her children stayed at the apartment overnight. They are black.

Defendant Rose Cole telephoned Ms. Lane at work on March 29, 1999 and asked if her friend Charlotte was black. When Ms. Lane responded affirmatively, Ms. Cole stated she should "look for somewhere else to live" as their "neighbors were not tolerant of that." Ms. Cole expressed fear that the property "would be vandalized by upset neighbors" and that "someone could get hurt."

On March 30, 1999, Ms. Cole left a letter at Ms. Lane's apartment. The letter stated that Ms. Lane was being evicted because of "non-payment of a security deposit" and "the number of occupants in the apartment," and that she had thirty days to vacate the apartment. At this juncture, the court assumes to be true plaintiffs' allegation that Ms. Lane had in fact tendered a security deposit upon leasing the apartment.[1]

On March 31, 1999, defendant John Cole physically confronted Ms. Lane in the hallway outside her apartment door. Mr. Cole blocked Ms. Lane's egress, "violently" shook his arms and threatened to "punch her," to "put her in the hospital," to "kill her" and to "remove the blacks" from the apartment if she did not do so. Rose Cole separated her husband from Ms. Lane. Ms. Cole stated that "a neighbor had complained about there being blacks in the building" and that "problems were going to continue" until Ms. Lane and Ms. McQueen's "kind" were gone. As Ms. Lane then retreated into her apartment, Ms. Cole kicked the front door.

---

1. It does not appear from the face of the amended complaint that the lease restricted the number of occupants, let alone the number of persons who could simultaneously visit the premises. Moreover, the right of a tenant to invite social guests may not be waived by a lease agreement. *See* 68 P.S. § 250.504–A; *Branish v. NHP Property Management, Inc.,* 694 A.2d 1106, 1107 (Pa.Super.1997). In any event, it appears from plaintiffs' allegations that defendants were motivated by the race and not number of persons on the premises.

During the confrontation, Ms. McQueen opened the apartment door and observed Mr. Cole's menacing conduct. Ms. McQueen was afraid that he would hurt her and the children, and closed the door. The two children were frightened and cowering inside the apartment.

On April 2, 1999, Ms. Lane began to load her belongings into her car which she had parked in front of the building. Ms. McQueen and her two children were sitting in the parked car when Mr. Cole observed the scene from a nearby patio. He shouted at Ms. Lane that she "better get in the car and leave or he would come and break her kneecaps" and to get "that trash" out of here, referring to Ms. McQueen and her children. Ms. Lane then departed promptly and returned with a police officer on April 5, 1999 to retrieve the rest of her belongings.

As a result of defendants' conduct, Ms. Lane and Ms. McQueen both continue to experience anger, fear, mental anguish and emotional distress accompanied by headaches and nightmares.

The Fair Housing Act makes it unlawful

(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin. (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

See 42 U.S.C. § 3604. The Act also makes it unlawful

to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or pro-tected by section 3603, 3604, 3605, or 3606 of this title.

See 42 U.S.C. § 3617.

The Act provides that "[a]n aggrieved person may commence a civil action in an appropriate United States district court." See 42 U.S.C. § 3613(a)(1)(A). An "aggrieved person" is defined as "any person who—(1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." See 42 U.S.C. § 3602(i).

■ Standing under the Fair Housing Act is not limited by traditional prudential requirements. Rather, it is subject only to the Article III requirement of injury in fact.

Any person harmed by a defendant's discriminatory actions, whether or not he is the object of that discrimination, may sue for any "distinct and palpable injury" he has suffered. See Havens Realty Corp. v. Coleman, 455 U.S. 363, 372, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982)(holding that "tester" with no intention of renting nevertheless had standing to sue for damages under Fair Housing Act based on misrepresentation made unlawful under § 804(d) as he suffered injury in "precisely the form the [Act] was intended to guard against"); Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 109, 111–15, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979) (white neighborhood residents who were not objects of discrimination had standing to sue for social and economic injuries resulting from loss of integrated character of neighborhood due to discriminatory housing practices); Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 208, 210–11, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972) (relying in part on statutory language providing standing to sue to "any person who claims to be injured by a discriminatory housing practice" to hold white tenants of apartment complex established injury in fact when alleging they were denied benefits of association with non-whites as result of discriminatory rental practices). See also

*Woods–Drake v. Lundy,* 667 F.2d 1198, 1201–02 (5th Cir.1982) (white tenants threatened with eviction for having black guests have standing under Fair Housing Act); *Bills v. Hodges,* 628 F.2d 844, 845 & n. 1 (4th Cir.1980) (suggesting that absent "Mrs. Murphy" exception, white tenants evicted because they entertained blacks in their apartment could maintain Fair Housing Act claim).

■ In no reported case to date has a court squarely held that a visitor has or lacks standing to sue under the Fair Housing Act. The court concludes that a visitor claiming a distinct and palpable injury as a result of a discriminatory housing practice has standing to sue. If it is a discriminatory housing practice to condition rental rights on the exclusion of black guests, it reasonably follows that a black invitee who is excluded or coerced into leaving because of race has been "aggrieved" or "injured" by a discriminatory housing practice." *See United States v. L & H Land Corp.,* 407 F.Supp. 576, 580 (S.D.Fla.1976) (although not required to address standing as plaintiff was United States, stating that refusal of landlord to permit tenant to entertain guests because of their race constitutes discriminatory conduct against both tenant and guests in violation of Fair Housing Act). All plaintiffs have stated cognizable Fair Housing Act claims.

■ To maintain a claim for intentional infliction of emotional distress, a plaintiff must allege intentional or reckless conduct by a defendant which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Hoy v. Angelone,* 554 Pa. 134, 720 A.2d 745, 754 (1998). "Where reasonable persons may differ, it is for the jury to determine whether the conduct is sufficiently extreme and outrageous so as to result in liability." *Motheral v. Burkhart,* 400 Pa.Super. 408, 583 A.2d 1180, 1188 (1990).

■ It is clear that "liability ... does not extend to mere insults, threats, annoyances, petty oppressions, or other trivialities." *Kazatsky v. King David Memorial Park, Inc.,* 515 Pa. 183, 527 A.2d 988, 991 (1987) (quoting Restatement (Second) of Torts § 46 cmt. d). *See also Clark v. Township of Falls,* 890 F.2d 611, 623 (3d Cir.1989) (reversing verdict for plaintiff who was defamed, falsely referred for prosecution and deprived of First Amendment rights); *Motheral,* 583 A.2d at 1190 (falsely accusing plaintiff of child molestation not sufficient).

■ Invidious discrimination is not alone sufficient to support an intentional infliction of emotional distress claim. *See Andrews v. City of Philadelphia,* 895 F.2d 1469, 1487 (3d Cir.1990) (sexual harassment insufficient); *Coney v. Pepsi Cola Bottling Co.,* 1997 WL 299434, *1 (E.D.Pa. May 29, 1997) ("highly provocative racial slurs and other discriminatory incidents do not amount to actionable outrageous conduct"); *Equal Employment Opportunity Comm'n v. Chestnut Hill Hosp.,* 874 F.Supp. 92, 96 (E.D.Pa.1995) (racial discrimination in employment decision insufficient to sustain claim); *Nichols v. Acme Markets, Inc.,* 712 F.Supp. 488, 494–95 (E.D.Pa.1989) (same), *aff'd,* 902 F.2d 1561 (3d Cir.1990); *Hoy,* 720 A.2d at 754–55 (sexual harassment including sexual propositions insufficient to sustain claim).

■ The ejection of a tenant from her home with threats of violence in retaliation for her refusal to accede to racial discrimination is another matter. The court concludes that such conduct, if proven, is sufficiently outrageous and extreme to sustain an intentional infliction of emotional distress claim. *See Silver v. Mendel,* 894 F.2d 598, 606 & n. 18 (3d Cir.1990)(allegation that defendants threatened plaintiff with physical injury and destruction of business to extort money from him sufficient to state emotional distress claim), *cert. denied,* 496 U.S. 926, 110 S.Ct. 2620, 110 L.Ed.2d 641 (1990); *Williams v. Guzzardi,* 875 F.2d 46, 52 (3d Cir.1989); (eviction of tenant by landlord who tricked tenant into giving up his keys and gave him no opportunity to remove

his belongings which were thrown into the street sufficient to sustain intentional infliction claim); *Pryor v. Mercy Cath. Med. Center*, 1999 WL 956376, *3 (E.D.Pa. Oct.19, 1999) (denying motion to dismiss intentional infliction of emotional distress claim where plaintiff alleged sexual harassment including physical force and retaliation); *Regan v. Township of Lower Merion*, 36 F.Supp.2d 245, 251 (E.D.Pa.1999) (upholding claim where plaintiff suffered retaliation for complaining about sexual harassment including sexually offensive comments and inappropriate touching); *McLaughlin v. Rose Tree Media Sch. Dist.*, 1 F.Supp.2d 476, 483 (E.D.Pa.1998) (upholding claim where plaintiff alleged sexual harassment including assault and threats of retaliation); *Hides v. CertainTeed Corp.*, 1995 WL 458786, *4 (E.D.Pa. July 26, 1995) (allegation that defendant fabricated reason to fire plaintiff and coerced him into signing false confession of criminal activity); *Bowersox v. P.H. Glatfelter Co.*, 677 F.Supp. 307, 311 (M.D.Pa.1988) (sexual harassment plus retaliation sufficient).

■ The conduct to which plaintiff Lane was allegedly subjected is sufficiently outrageous and extreme to support an intentional infliction of emotional distress claim. Given the stringent standard for outrageousness employed by the courts in assessing intentional infliction claims under Pennsylvania law, the question is closer as to plaintiff McQueen. However offensive, the alleged insults directed at Ms. McQueen or shouted in her presence are alone insufficient to state a claim. It can reasonably be inferred from the complaint that Ms. McQueen also was placed in fear for her safety and that of her young children. Whether the conduct of either defendant was sufficiently extreme and atrocious as to Ms. McQueen is bet-

ter answered at the summary judgment stage when the court can more precisely ascertain the extent to which she may have witnessed the offending conduct and to which each defendant may have been aware of her presence. *See Johnson v. Caparelli*, 425 Pa.Super. 404, 625 A.2d 668, 671 (1993), *alloc. denied*, 538 Pa. 635, 647 A.2d 511 (1994).[2]

■ To maintain a claim for intentional infliction of emotional distress, a plaintiff must also allege that she has suffered "severe" emotional distress resulting from the defendant's conduct. Severe emotional distress includes "fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea." *See* Restatement (Second) of Torts § 46, cmt. j; *Kazatsky*, 527 A.2d at 996 (Larsen, J., concurring). Such emotional distress must also be accompanied by some physical manifestation. *See Corbett v. Morgenstern*, 934 F.Supp. 680, 684–85 (E.D.Pa.1996) (symptoms of severe depression, nightmares, anxiety and ongoing mental or physical harm are sufficient). Plaintiffs' allegations that they continue to suffer "fear, anxiety, stress, anger, headaches, nightmares, humiliation, embarrassment, emotional distress [and] mental anguish" are sufficient to raise an inference of severe emotional distress.

The court cannot conclude beyond doubt from plaintiffs' pleadings that they will be unable to prove any set of facts which would entitle them to relief on the claims they have asserted. Accordingly, defendants' motion will be denied.

---

**2.** Emotional distress is in any event compensable for a Fair Housing Act violation. *See Marable v. Walker*, 704 F.2d 1219, 1220 (11th Cir.1983); *Phillips v. Hunter Trails Community Ass'n*, 685 F.2d 184, 190 (7th Cir.1982); *Smith v. Anchor Bldg. Corp.*, 536 F.2d 231, 235 (8th Cir.1976); *Williams v. Matthews Co.*,

499 F.2d 819, 829 (8th Cir.1974), *cert. denied*, 419 U.S. 1021, 95 S.Ct. 495, 42 L.Ed.2d 294 (1974); *Portee v. Hastava*, 853 F.Supp. 597, 612, 614 & n. 9 (E.D.N.Y.1994); *United States v. Lepore*, 816 F.Supp. 1011, 1023 (M.D.Pa. 1991).