Patricia MANSMANN

v.

Kenneth TUMAN, Joan Tuman, Gary Ginsberg, and Joseph Rizzo.

Civil Action No. 96–5252.

United States District Court, E.D. Pennsylvania.

March 11, 1997.

Howard K. Trubman, Cornelia Farrell Maggio, Philadelphia, PA, for Plaintiff.

George P. Noel, Media, PA, for Kenneth Tuman, Joan Tuman.

Lillian E. Benedict, H. Robert Fiebach, Cozen and O'Connor, Philadelphia, PA, for Gary Ginsberg.

Jeffrey B. McCarron, Swartz, Campbell & Detweiler, Philadelphia, PA, for Joseph Rizzo.

## MEMORANDUM

PADOVA, District Judge.

This lawsuit, brought in diversity, resulted from a prior suit in which Plaintiff, Patricia Mansmann ("Mansmann"), was a defendant, and Defendants Joan and Kenneth Tuman ("the Tumans") were plaintiffs who were represented by attorneys, Defendants Gary Ginsberg ("Ginsberg") and Joseph Rizzo ("Rizzo"). In that suit, the Tumans alleged that the defendants, while providing psychological counselling to their daughter, had implanted in her mind false memories of satanic rituals they her parents had supposedly performed and that they had encouraged their daughter to move to another state and cut off all communications with them. On April 25, 1996, an Order was entered in that case granting Patricia Mansmann's motion for summary judgment as to all counts. *Tuman v. Genesis Assoc.*, 935 F.Supp. 1375 (E.D.Pa. 1996). Patricia Mansmann now sues the Tumans, Ginsberg, and Rizzo for damages allegedly resulting from that suit and other conduct in which they engaged while pursuing it.

The four Defendants have filed three Motions to Dismiss the Amended Complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). (The Tumans filed a single motion.) Because many of the issues and arguments in the three motions are essentially the same, they will be addressed together.

## I. LEGAL STANDARDS

The purpose of a Motion to Dismiss pursuant to Federal rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint. *Winterberg v. CNA Ins. Co.*, 868 F.Supp. 713, 718 (E.D.Pa.1994), *aff'd*, 72 F.3d 318 (3d Cir.1995). A claim may be dismissed under Rule 12(b)(6) for failure to state a claim only if the plaintiff can prove no set of facts in support of the claim that would entitle her to relief. *Conley v. Gibson*, 355 U.S.

41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In considering such a motion, a court must accept all of the facts alleged in the complaint as true and must liberally construe the complaint in the light most favorable to the plaintiff. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir.1994); *Robb v. City of Philadelphia*, 733 F.2d 286, 290 (3d Cir. 1984). The question is not whether the plaintiff will ultimately prevail, but whether she is entitled to present evidence in support of her claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

A federal court sitting in diversity applies the Federal Rules of Civil Procedure. *Hanna v. Plumer*, 380 U.S. 460, 473, 85 S.Ct. 1136, 1145, 14 L.Ed.2d 8 (1965). Therefore, "Federal Rule of Civil Procedure 8(a), not Pennsylvania pleading law, governs the standard of specificity applicable to plaintiff's ... claim[s]." *Lynch v. Borough of Ambler*, No. A. 94–6401, 1995 WL 113290, at *5 (E.D.Pa. March 15, 1995). Under Rule 8(a), the Amended Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2).

## II. DISCUSSION: COUNTS IN THE AMENDED COMPLAINT

### A. COUNT ONE—WRONGFUL USE OF CIVIL PROCEEDINGS

The elements of a cause of action for wrongful use of civil proceedings under Pennsylvania law are as follows:

(a) **Elements of action.**—a person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings [if]:

(1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

(2) The proceedings have terminated in favor of the person against whom they are brought.

42 Pa.Cons.Stat.Ann. § 8351 (1982) (West 1982), *quoted in Hart v. O'Malley*, 436 Pa.Super.Ct. 151, 160, 647 A.2d 542, 546–47 (1994), *aff'd*, 544 Pa. 315, 676 A.2d 222 (1996).

### 1. The Attorneys

In their Motions to Dismiss, the two attorneys, Ginsberg and Rizzo, make essentially the same arguments. I will therefore consider their motions together, relying primarily on Ginsberg's Memorandum. Ginsberg states that an important consideration in applying this statute to attorneys is that it not intimidate counsel in their zealous representation of their clients, thereby adversely affecting the adversarial system. (Ginsberg Mem. in Supp. ("Ginsberg Mem.") at 6.) For this reason, a plaintiff has a heavy burden in stating and sustaining a claim against an attorney for wrongful use of civil proceeding. (*Id.* at 7.)

Ginsberg claims that the Amended Complaint fails to allege a cause of action against him for wrongful use of civil proceedings in two respects, either of which is sufficient reason to dismiss this count against him: it fails adequately to allege that he brought the prior action primarily for an improper purpose, and it fails adequately to allege that he lacked probable cause.

Plaintiff makes the following allegations under Count One of her Amended Complaint:

20. Defendants failed to fully investigate the allegations of the claim against Plaintiff MANSMANN.

21. Defendants further failed to secure appropriate and adequate professional expert opinions regarding the allegations of the complaint prior to filing this action, and otherwise had no probable cause for bringing the action.

22. Moreover, based on evidence adduced during discovery it is clear the Complaint was filed with actual malice and without probable cause.

23. The Defendants violated 42 P.S.C. Section 8351 et seq. at the time of filing and further violated the provisions therein by continuing in spite of evidence making it clear that continuation was improper, and merely for purposes of harassment or to maliciously injure Plaintiff MANS-

MANN in her individual and professional capacity.

(Am.Compl. ¶¶ 20–23.)

### a. Improper purpose

[1] Plaintiff alleges that defendants acted "with actual malice" and "merely for purposes of harassment or to maliciously injure" her in filing the underlying action against her. (Am.Compl. ¶¶ 22–23.) These allegations track the language of 42 Pa. Cons.Stat. Ann. §§ 8351 and 8352 (quoted *supra* and *infra*, n. 2). Ginsberg argues that the allegations are conclusory and do not properly allege that the attorneys did not initiate the underlying suit "primarily for the purpose of aiding [their] client in obtaining a proper adjudication of [her] claim." 42 C.S.A. § 8351(a)(1); (Ginsberg Mem. at 8–10.) Ginsberg further notes that Plaintiff does not allege he brought the action knowing it to be invalid, but merely alleges that he did not investigate his client's claims properly or secure proper expert witnesses before filing the case on his clients' behalf. (Ginsberg Mem. at 8–10.) Ginsberg contends these allegations may be sufficient to sustain a claim of negligence, but not one of wrongful use of civil proceedings, and he notes that this case contrasts sharply with cases in which Pennsylvania appellate courts have either allowed claims for wrongful use of civil proceedings to go forward against attorneys or have affirmed judgments against them based on such claims because of an attorney's improper purpose. (*Id.* at 9–10 (citing *Kelly–Springfield Tire Co. v. D'Ambro*, 408 Pa.Super.Ct. 301, 596 A.2d 867 (1991) (holding that plaintiff stated a § 8351 claim in alleging that attorney, knowing his client had defaulted in real estate purchase agreement, acted to prevent vendors from selling to a third party and to force them to transfer property to client by subjecting property to encumbering litigation in state court and withdrawing that action and starting new action in federal court just before a hearing on the state court action)); *Ludmer v. Nernberg*, 433 Pa.Super.Ct. 316, 640 A.2d 939 (1994) *appeal denied*, 541 Pa. 652, 664 A.2d 542 (1995), *cert. denied*, —— U.S. ——, 116

S.Ct. 1849, 134 L.Ed.2d 950 (1996) (*affirming* verdict against an attorney who brought a suit unauthorized by his client against a doctor on a claim personal to the client)).

I conclude that Plaintiff has not properly alleged that the attorneys acted with an improper motive in bringing the suit. Failing to investigate allegations *fully* and failing to secure appropriate expert opinions *before* filing a suit do not support an allegation of improper motive in filing it. Those tasks are frequently undertaken or completed after filing. Plaintiff alleges that the attorneys filed the law suit "with actual malice," and "merely for purposes of harassment or to maliciously injure her," but none of the facts she alleges in Count One support a claim of an improper motive. The allegations are insufficient to give notice to the attorneys as to what they allegedly did or didn't do to give rise to this claim of an improper motive.

■■■ Plaintiff argues that she is alleging not just that the attorneys wrongfully initiated the underlying suit, but also that they wrongfully continued it "in spite of evidence making it clear that continuation was improper, and merely for purposes of harassment or to maliciously injure" her. (Am. Compl. ¶ 23.) But here too, there is nothing in the Amended Complaint that elaborates on this point and no indication what this evidence might have been. Insufficient evidence to withstand a summary judgment motion is not in itself evidence of improper motive. I conclude the allegation that the attorneys continued the lawsuit merely to harass or maliciously to injure Plaintiff in spite of unspecified "evidence" fails to state a claim for the same reason that the allegation the attorneys initiated the law suit for an improper purpose fails: not enough is alleged to give the attorneys reasonable notice of what conduct gave rise to the claim, even under the very liberal standard of Federal Rule of Civil Procedure 8(a).

### b. Probable cause

■■■ Ginsberg also argues that Plaintiff cannot make out the second element of the cause of action: probable cause.[1] But this

---

1. The term "probable cause," which appears in 42 Pa.Cons.Stat.Ann. § 8351(a)(1), is defined in

element does not apply to an attorney unless he acted with an improper purpose. The Pennsylvania Superior Court has quoted the Restatement (Second) of Torts on this point:

> An attorney who initiates a civil proceeding on behalf of his client[,] ... even if he has no probable cause and is convinced that his client's claim is unfounded, ... is still not liable if he acts primarily for the purpose of aiding his client in obtaining a proper adjudication of his claim. (*See* § 676). An attorney is not required or expected to prejudge his client's claim, and although he is fully aware that its chances of success are comparatively slight, it is his responsibility to present it to the court for adjudication if his client so insists after he has explained to the client the nature of the chances.
>
> > If, however, the attorney acts without probable cause or belief in the possibility that the claim will succeed, and for an improper purpose, as, for example, to put pressure upon the person proceeded against in order to compel payment of another claim of his own or solely to harass the person proceeded against by bringing a claim known to be invalid, he is subject to the same liability as any other person.

*Hart v. O'Malley*, 436 Pa.Super.Ct. at 167–68, 647 A.2d at 550 (quoting Restatement (Second) of Torts § 674 comment d (1977). Therefore, because I have concluded the Amended Complaint failed adequately to allege an improper motive on the part of the attorneys, the question of probable cause does not arise with respect to them. Nonetheless, I will address the question.

In arguing this point, both sides rely on materials from the prior case that are not part of the pleadings. Federal Rule of Civil Procedure 12(c) states: "If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Because the parties have not had a reasonable opportunity to present all material made pertinent to these motions as summary judgment motions, I will not convert them, and I therefore cannot consider materials outside the pleadings.

Considering only the Amended Complaint, the Plaintiff has failed adequately to allege that the attorneys lacked probable cause. She alleges a lack of probable cause in their filing the action without fully investigating the allegations against her and without securing adequate expert opinions on the allegations, but, as noted above, a completed investigation is not required or expected before filing. She alleges they had no probable cause to continue the lawsuit, based on evidence adduced during discovery, but gives no clue as to what the evidence was. Ginsberg cites as an example of a case in which the plaintiff adequately pled lack of probable cause *Gentzler v. Atlee*, 443 Pa.Super.Ct. 128, 660 A.2d 1378, *appeal denied,* 543 Pa. 694, 670 A.2d 142 (1995) (holding plaintiff stated a claim against attorney who, acting for client who was infected with HIV as a result of a blood transfusion, sued the cardiologist who had recommended the patient enter the hospital for tests when the attorney knew the cardiologist had not ordered the transfusion or participated in the tests or surgery and had no duty to obtain informed consent).

---

42 Pa.Cons.Stat.Ann. § 8352 (West 1982), entitled "Existence of probable cause." It provides, in its entirety:

A person who takes part in the procurement, initiation or continuation of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and either:

(1) Reasonably believes that under those facts the claim may be valid under existing or developing law;

(2) Believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; or

(3) Believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.

With respect to improper motive and lack of probable cause, the allegations under Count One of the Amended Complaint merely track the language of the statute and make no factual allegations that would support the claims. Therefore, I find that the Amended Complaint fails to state a claim against the attorneys for wrongful use of civil proceedings.

### 2. The Tumans

 r the Restatement (as quoted by the Pennsylvania Superior Court), litigants do not have the special protection against this claim that attorneys enjoy; however, Count One also fails to state a claim against the Tumans. This count is the first one in the Amended Complaint, and it contains only those allegations listed in the count and the prior allegations, which are incorporated by reference. The only substantive allegations are those quoted above, ¶¶ 20–23, which are directed mainly to the attorneys. The attorneys are the ones who had the responsibility for investigating the Tumans claims and for securing expert testimony. They also had the responsibility for deciding whether the case should be continued, based on "evidence adduced during discovery." (Am.Compl. ¶ 22.) It is unclear what role Plaintiff assigns to the Tumans in this process other than alleging that they acted with malice and an intention to harass and maliciously to injure plaintiff, completely conclusory allegations in the language of the statute. If Plaintiff had alleged the Tumans had intentionally lied to their attorneys or withheld material information from them for the improper purpose of getting them to file a lawsuit the Tumans knew was not warranted, Plaintiff would have stated a claim against them for wrongful use of civil proceedings. As it is, she has failed to give them notice of what they did to warrant such a claim. As I stated elsewhere: "It is true that the Federal Rules of Civil Procedure contemplate a system of notice, rather than factual, pleading. Nonetheless, a modicum of factual pleading may be required to effectuate the purposes of notice pleading, i.e., giving the opposing party general knowledge of the conduct for which it must answer." *Berger Bldg. Prod. Corp. v. American Protection Ins. Co.*, No. 96–6959, slip op. at 3, 1997 WL 109606 (E.D.Pa. March 6, 1997). Therefore, I find that the Amended Complaint fails to state a claim against the Tumans for wrongful use of civil proceedings.

### B. COUNT TWO—DEFAMATION

 ] The elements of a claim for defamation under Pennsylvania law are: (1) a defamatory communication; (2) pertaining to the plaintiff; (3) published by the defendant to a third party; (4) who understands the communication to have a defamatory meaning with respect to plaintiff; and (5) that resulted in plaintiff's injury. *Petula v. Mellody,* 138 Pa.Commw. 411, 588 A.2d 103 (1991); 42 Pa.Cons.Stat.Ann. § 8343 (1982).

Defendants Rizzo and Ginsberg make two arguments in their Motions to Dismiss with respect to this count:

### 1. The Attorneys

#### a. Failure to allege an element of the claim

 The attorneys contend that Plaintiff has not alleged the third element of this cause of action against them, that of publication of defamatory statements concerning her. I agree. This count of the Amended Complaint refers to statements made by the Tumans only, and Plaintiff's occasional use of the general term "Defendants" does not change that. The Amended Complaint alleges the following with respect to who made the allegedly defamatory statements:

29. Commencing in approximately August, 1992, until the present time, *Defendants KEN and JOAN TUMAN regularly and with malice made slanderous and libelous statements* about the Plaintiff in documents to the Court; to parties in the lawsuit; various police and other investigative agencies; orally at deposition; at public meetings both within the Commonwealth of Pennsylvania and elsewhere and via numerous other communications, both written and oral to both individuals and groups as well as to various members of the media.

30. *These defamatory statements* included allegations that the Plaintiff committed

professional malpractice and misconduct in Plaintiff's treatment of Diane Tuman, daughter of Defendants KENNETH AND JOAN TUMAN said treatment beginning on or about July 1990.

31. *The Defendants* acted maliciously and recklessly *in making these statements* in making these statements about the Plaintiff as Defendants should have known that the allegations against Plaintiff were false and none of the allegations and statements are supported by even one piece of evidence.

32. Further, *Defendants made statements* that throughout the course of treatment with *their daughter*, Plaintiff MANSMANN made numerous statements and engaged in various activities to exert undue control on their daughter with the specific purpose of furthering the treatment of their daughter who was not in need of such treatment to unjustly enrich Plaintiff.

33. Further, *Defendants,* both individually and collectively, *made statements* and gave testimony [that], Plaintiff forced *their daughter* to distance herself and ultimately to separate and "detach" entirely from Defendants.

34. *These statements* were and are injurious to the good name and reputation of Plaintiff, Mansmann.

35. *These statements made by the Defendants* were recited before the Court, the parties, the media, various groups of individuals in numerous meetings, the attorneys in this lawsuit and numerous individuals in groups, meetings, seminars, conferences and gatherings of various types.

36. *These statements* were of and concerning Plaintiff MANSMANN and were clearly seen as applying to the Plaintiff.

. . .

38. *These statements* about Plaintiff's professional ability have had the effect of severely damaging the professional and business reputation of the Plaintiff.

(Am.Compl. ¶¶ 29–36, 38 (emphasis supplied).)

Most of the allegations in Count Two refer to "these statements" made by Defendants. Only three paragraphs identify "these statements" and tell us which Defendants made them, paragraphs 29, 32, and 33. Paragraph 29 states that "Defendants KEN and JOAN TUMAN regularly and with malice made slanderous and libelous statements about the Plaintiff." (Am.Compl. ¶ 29.) Paragraph 32 tells us that "Defendants made [unfavorable] statements" about Mansmann's treatment of "their daughter," and paragraph 33 states that Defendants "made statements" that Mansmann "forced their daughter to distance herself and ultimately to separate and 'detach' entirely from Defendants." Paragraphs 32 and 33 thus identify the defendants who made the statements as the parents of "their daughter," in other words, Kenneth and Joan Tuman. All the other paragraphs alleging defamatory material simply refer to "these statements," which are identified only in paragraphs 29, 32, and 33, and only the Tumans were alleged to have made "these statements." Plaintiff has failed to allege that any defamatory statements were made by the attorneys, and she has therefore failed to plead all the elements of the tort with respect to them.

### b. Judicial privilege

In addition to the attorneys' argument that the all the elements of defamation were not satisfactorily pled, they also make the following arguments. Ginsberg quotes the Pennsylvania Superior Court as saying:

> It has long been the law of Pennsylvania that statements made by judges, attorneys, witnesses and parties in the course of or pertinent to any stage of judicial proceedings are absolutely privileged and, therefore, cannot form the basis for liability for defamation. . . .

> The limitations on the scope of this privilege are equally well-defined. As the Supreme Court has explained, the "protected realm" is limited to "those communications which are issued in the regular course of judicial proceedings and which are pertinent and material to the redress or relief sought.

*Pawlowski v. Smorto*, 403 Pa.Super.Ct. 71, 80, 588 A.2d 36, 41 (1991) (quoting *Post v. Mendel*, 510 Pa. 213, 221, 507 A.2d 351, 355 (1986)) (emphasis omitted).

In her references to the attorneys in Count Two, Plaintiff alleges:

39. Defendants, KEN and JOAN TU-MAN, Personal and Trial Counsel, knew or should have known that such allegations and statements were insufficient as a matter of law to support such action and claims.

(Am.Compl. ¶ 39.)

■ As discussed above, Plaintiff has not alleged that the attorneys actually made any "such allegations and statements," so we can take this paragraph to refer to the attorneys only in their role as advisors of their clients and as their representatives in the judicial process, a privileged role.

### 2. The Tumans

■ The Tumans join in the arguments made by Ginsberg regarding Plaintiff's failure to satisfy all the elements of defamation under Pennsylvania law, but they cannot argue that Plaintiff failed to allege they made any defamatory statements. The Tumans also invoke judicial privilege, but they do not develop this argument. In any case, it would apply to only some of their statements, those made in the context of their suit. Plaintiff alleges that the Tumans also defamed her "at public meetings both within the Commonwealth of Pennsylvania and elsewhere and via numerous other communications, both written and oral to both individuals and groups as well as to various members of the media." (Am.Compl. ¶ 29.) Allegations made in such contexts would not be privileged.

■ The Tumans' main argument is that the pleading as to defamation is not sufficiently specific to give them the notice required under Fed.R.Civ.P. 8(a). Plaintiff's allegation that the Tumans stated Plaintiff had "committed professional malpractice and misconduct," (Am.Compl. ¶ 30) in her treatment of their daughter is vague taken by itself, but there are also more specific allegations that the Tumans alleged that she exert-ed "undue control on their daughter with the specific purpose of furthering the treatment of their daughter who was not in need of such treatment to unjustly enrich Plaintiff," (Am.Compl. ¶ 32), and that they stated she "forced their daughter to distance herself and ultimately to separate and 'detach' entirely from [them]." (Am.Compl. ¶ 33.) These allegations are specific enough to give notice and to survive a motion to dismiss.

### C. COUNT THREE—INTERFERENCE WITH BUSINESS RELATIONS

■ Plaintiff did not name the tort she was alleging in Count Three of her Amended Complaint, but in her Response to Ginsberg's Motion to Dismiss, she labels it "tortious interference with prospective business relations." (Pl.' Resp. at 14–15.) The elements of the tort are: (1) a prospective contractual relationship between plaintiff and a third party; (2) a purpose or intention to harm the plaintiff by preventing the relationship from occurring; (3) the absence of privilege or justification with respect to defendant's conduct; and (4) the occurrence of actual damage as a result of the conduct. *Advent Sys., Ltd. v. Unisys Corp.*, 925 F.2d 670, 672 (3d Cir.1991). The Pennsylvania Supreme Court has defined "prospective contractual relation" as "something less than a contractual right, something more than a mere hope." It is a reasonable probability that a contractual relationship will be established. *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 925 (3d Cir.), *cert. denied*, 498 U.S. 816, 111 S.Ct. 58, 112 L.Ed.2d 33 (1990) (quoting *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 209, 412 A.2d 466, 471 (1979)).

### 1. The Attorneys

#### a. Failure to allege a claim against Ginsberg

■ Ginsberg notes that his name is not mentioned in any of the 22 paragraphs comprising this account. (Attorney Rizzo is mentioned by name several times.) The question is whether general references to "Defendants" can be read to include Ginsberg. Plaintiff begins by alleging that:

46. Commencing approximately in 1994, Defendants KEN TUMAN, JOAN TUMAN, and RIZZO, from time to time attended meetings of numerous persons including parents of former and present clients, former patients and numerous other interested parties.

(Am.Compl. ¶ 46.) She then goes on to discuss the purposes of the meetings (to put Plaintiff out of business and get her license revoked) and what transpired at the meetings. The only Defendants Plaintiff identifies by name in this count are the Tumans and attorney Rizzo. In only a few paragraphs does Plaintiff use the term "Defendants" without specifying which ones. They are:

51. Defendants, both individually and collectively, attended numerous meetings with this group in furtherance of their agenda to put Plaintiff out of business; see her stripped of her license to practice; guarantee that she would lose her CAC certification, and, lastly, would never be able to practice as a psychotherapist.

54. While attending these meetings, both within the Commonwealth of Pennsylvania, as well as elsewhere, Defendants discussed the treatment rendered by Plaintiff Mansmann to their daughter, as well as stories of other individuals in order to show that Plaintiff was not fit to practice as a psychotherapist, and therefore should be put out of business.

. . .

56. Defendants made no effort to independently verify the truth of their allegations and in fact became more strident as evidence was adduced to show their allegations were neither true nor supportable in fact.

. . .

59. Defendants continued their efforts against Plaintiff in spite of various rulings and findings by the court that the allegations against Plaintiff in their complaint were baseless and evidence presented to support those allegations was insufficient as a matter of law to support the claims raised.

(Am.Compl. ¶¶ 51, 54, 56, 59.)

In three of these four paragraphs, the term "Defendants" cannot include Ginsberg. In paragraph 54, Defendants allegedly discuss treatment rendered to "their daughter." In paragraph 59, Defendants continued to try to put Plaintiff out of business despite rulings that the allegations in "their complaint" were baseless. These two paragraphs clearly refer only to the Tumans. In paragraph 56, Plaintiff alleges that Defendants "made no effort to independently verify the truth of their allegations," but the Amended Complaint does not state that Ginsberg made any allegations. The only defendants who were alleged to have made allegations were the Tumans, in the following paragraphs:

50. As part of the agenda, certain of the persons in attendance including Defendants KEN TUMAN and JOAN TUMAN, addressed the group to "tell their stories" in order to illustrate for the group the type of allegedly improper care and treatment given by Plaintiff.

. . .

55. From time to time, Defendants KEN and JOAN TUMAN discussed their views of treatment by Plaintiff MANSMANN with various members of the professional community in which Plaintiff MANSMANN practices to elicit support in putting Plaintiff out of business based on their stories of substandard treatment by Plaintiff for which there was not then, nor is there now, any evidence or other proofs.

(Am.Compl. ¶¶ 50, 55.)

That leaves paragraph 51, in which the term "Defendants" arguably could include Ginsberg. It specifies that Defendants attended numerous meetings in furtherance of their tortious purpose. Attending the meetings is not by itself sufficient to qualify as tortious conduct, and nothing more is alleged as to Defendant Ginsberg. Therefore Count Three does not state a claim against Ginsberg. Liberally construing the Amended Complaint in the light most favorable to Plaintiff, the allegations in Count Three do not state a claim against Ginsberg.

### b. Judicial privilege

Both Ginsberg and Rizzo argue that their actions were protected by judicial privilege. Ginsberg notes that Pennsylvania courts have construed the judicial privilege to apply to the tort of interference with business relationships. The Pennsylvania Superior Court recognized a limited judicial privilege for attorneys in an action alleging both a conspiracy to interfere and interference with contractual relations in *Pelagatti v. Cohen,* 370 Pa.Super.Ct. 422, 433, 536 A.2d 1337, 1342 (1987), *appeal denied,* 519 Pa. 667, 548 A.2d 256 (1988). The actions that allegedly interfered with plaintiff's contractual relations were the solicitation by an attorney of a letter about a potential witness, the use of that letter in filing two allegedly "sham" actions, the "leaking" of the letter to the press by an attorney, and statements to the press on the same topic by several attorneys. 370 Pa.Super.Ct. at 433, 536 A.2d at 1342. The court found that only the first two of these actions were protected by absolute judicial privilege. 370 Pa.Super.Ct. at 434-35, 536 A.2d at 1343.

▬▬▬▬▬ Rizzo doesn't cite *Pelagatti,* he too claims that his activities come under the absolute immunity for an attorney with respect to the filing of lawsuits. The *Pelagatti* court distinguished that absolute judicial privilege from the qualified privilege that attached to the media activities of the attorneys. The court stated: A qualified privilege is subject to loss by abuse; moreover, while the existence of a privilege, and the extent of that privilege, are questions of law for the court, it is a question of fact for the jury as to whether a qualified privilege has been abused. 370 Pa.Super.Ct. at 435, 536 A.2d at 1342-43 (citation omitted). The court declined to hold, on the basis of privilege alone, that the facts pled as to the activities of attorneys who had dealings with the press were insufficient to state a cause of action for interference with contractual relations. Similarly, in this case, while many of the attorneys' actions are protected by absolute immunity, it is not clear that all of Rizzo's alleged actions at the meetings were entitled to absolute immunity; some may be entitled to qualified immunity only. Because

of that, this count survives Rizzo's Motion to Dismiss.

▬▬▬▬] Rizzo claims that he cannot be charged with complicity simply on the basis of his knowledge of his client's actions; however, that is not all the Amended Complaint alleges. It alleges that he attended meetings of persons including parents of Plaintiff's former and present clients, the purpose of which was to put her out of business, that he sought to secure revocation of her license to practice as a psychologist in Pennsylvania and her certification as an Addictions Counselor, that he sought to locate persons to join the group and assist in furthering the mission, and that he attempted to elicit information from those who attended the meetings to support the effort to put Plaintiff out of business. (Am.Compl. ¶¶ 46–49, 52, 53, 58.) The allegations in Count Three adequately support a claim against Rizzo.

▬▬▬▬ With respect to Ginsberg, Plaintiff has not alleged that any of his specific actions contributed to this tort. In addition, her response to Ginsberg's Motion to Dismiss indicates that this count against Ginsberg rests on his role as the Tumans' attorney. She states:

> Evidence shows there is no evidence to support the claims raised in the underlying action. Thus, to the extent Defendant Ginsberg can be shown to have failed in the duty to investigate, and further to have pressed the claim in spite of overwhelming indication of improper basis for said action, and to have improperly continued the claim, he can be shown to have used the procedure to further the plan to tortiously interfere with Plaintiff Mansmann's business, liability can be found.

(Pl.'s Resp. at 14.) Ginsberg argues that such activity is protected by judicial immunity, and I agree. Therefore I will dismiss Count Three as to him.

### 2. The Tumans

▬▬▬▬ The Tumans contend that Plaintiff failed to identify the tort underlying the conspiracy she appeared to be alleging in Count Three, and, in addition, that the conspiracy was not pled with sufficient specificity. They state that her Amended Complaint contains

only the bald assertions that defendants Tuman attended meetings but offers no facts in support of a cause of action for conspiracy either to commit an unlawful act or to do an otherwise unlawful act by an unlawful means.[2] (*Id.* at 11.)

Plaintiff clearly alleges that the Tumans were trying to put her out of business and make it impossible for her to practice her profession in Pennsylvania. This should have alerted them that she was claiming some sort of tortious interference with her business. Plaintiff's Amended Complaint is long on Defendants' intentions and short on their implementation of the intentions, but she does allege that the Tumans collected material at the meetings with other parents and spoke with Plaintiff's professional colleagues in an effort to put her out of business:

> 55. From time to time, Defendants KEN and JOAN TUMAN discussed their views of treatment by Plaintiff MANSMANN with various members of the professional community in which Plaintiff Mansmann practices to elicit support in putting Plaintiff out of business based on their stories of substandard treatment by Plaintiff for which there was not then, nor is there now, any evidence or other proofs.

(Am.Compl. ¶ 55.) She also alleges that their efforts were based on misrepresentations and fabrications and that they were very successful, to her detriment. Accepting all of the facts alleged in the Amended Complaint as true and liberally construing it in the light most favorable to Plaintiff, Count Three survives the Tumans Motion to Dismiss.[3]

## D. COUNT FOUR—INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Section 46 of the Restatement (Second) of Torts describes the tort of intentional infliction of emotional distress as follows:

**§ 46. Outrageous Conduct Causing Severe Emotional Distress**

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress

> (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or

> (b) to any other person who is present at the time, if such distress results in bodily harm.

Restatement (Second) of Torts § 46 (1965).

Rizzo makes two arguments in his Motion to Dismiss with respect to this count. Ginsberg joins in both of the arguments and the Tumans join only in the second one.

### 1. The Attorneys' Involvement

] The paragraphs under Count Four (Am.Compl. ¶¶ 67–72) refer to Defendants collectively. No individual Defendant is named, only "Defendants." Rizzo claims that this count does not apply to him because he is not named, and Ginsberg states that the count, by its language, is directed at the Tumans. While it is true that some of the paragraphs of the count clearly mean to apply only to the Tumans (¶ 70 speaks of "their daughter"), it is not clear that all of them exclude the attorneys. For example:

> 68. Defendants acted with the intention of causing Plaintiff to become unable and

---

2. The Tumans' Memorandum actually said "or to do an unlawful act by an unlawful means." (Tuman's. Mem. in Supp. at 11.) I assume they mean "or to do an otherwise lawful act by an unlawful means," which is the language the Pennsylvania Supreme Court uses in describing the elements of civil conspiracy in Pennsylvania. *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 211, 412 A.2d 466, 472 (1979).

3. The Tumans argue that I should follow the reasoning of *In re: Orthopedic Bone Screw Products Liability Litigation*, No. MDL 1014, 1996 WL 557334 (E.D.Pa. Sept. 30, 1996), and dismiss the count because it is not pled with sufficient particularity. That argument is based on their understanding of the cause of action as one of conspiracy rather than one of tortious interference with prospective business relations.

unwilling to continue in her chosen profession and further to cause Plaintiff to stop all efforts to practice her profession. (Am.Compl. ¶ 68.) In addition, Count Four incorporates the preceding counts, so that anything pled against the attorneys elsewhere must be considered here. Therefore, the count cannot be dismissed on the ground that it does not refer to the attorneys.

### 2. Cause of Action in Pennsylvania

Rizzo cites *Kazatsky v. King David Memorial Park, Inc.*, 515 Pa. 183, 527 A.2d 988 (1987), as stating that Pennsylvania has not adopted the Restatement (Second) of Torts § 46 (1965), intentional infliction of emotional distress. In that case, the Pennsylvania Supreme Court declined to adopt Restatement § 46 and stated that it would "leave to another day the question of the viability of section 46 in this Commonwealth." *Kazatsky*, 515 Pa. at 185, 527 A.2d at 989. Rizzo further notes that courts since have concluded that the tort is not recognized, and he cites a Pennsylvania Superior Court case that takes that position. *Kelly v. Resource Housing, Inc.*, 419 Pa.Super.Ct. 393, 399, 615 A.2d 423, 426 (1992).

I rejected this argument in *Corbett v. Morgenstern*, 934 F.Supp. 680 (E.D.Pa. 1996), in which the defendant made the same point and cited the same case, *Kazatsky*. There, I noted that some Pennsylvania appellate courts had recognized the tort, and some had not. *Johnson v. Caparelli*, 425 Pa.Super.Ct. 404, 625 A.2d 668 (1993) (citations to cases therein that acknowledge the tort), *appeal denied*, 538 Pa. 635, 647 A.2d 511 (1994); *Ford v. Isdaner*, 374 Pa.Super. 40, 542 A.2d 137 *appeal denied*, 520 Pa. 617, 554 A.2d 509 (1988) (holding *Kazatsky* did not recognize the tort). The Third Circuit has confronted this question since *Kazatsky* was decided, and it has repeatedly held that Pennsylvania will recognize the tort, in spite of 'speculation' to the contrary raised by *Kazatsky*. *Corbett*, 934 F.Supp. at 683; *see, e.g., Silver v. Mendel*, 894 F.2d 598, 606 (3d Cir.), *cert. denied*, 496 U.S. 926, 110 S.Ct. 2620, 110 L.Ed.2d 641 (1990); *Clark v. Falls Twp.*, 890 F.2d 611, 623 (3d Cir.1989); *Williams v. Guzzardi*, 875 F.2d 46, 51 (3d Cir.1989). The Third Circuit's interpretation of Pennsylvania law is binding on the district court, and therefore, I must reject Defendant Rizzo's argument.

Rizzo next argues that Plaintiffs cannot establish a right to recovery for intentional infliction of emotional distress, even if such a claim were recognized Pennsylvania law, because the conduct alleged is not so outrageous as to give rise to liability under the tort. The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Johnson v. Caparelli*, 425 Pa.Super.Ct. 404, 412, 625 A.2d 668, 672 (1993), *appeal denied*, 538 Pa. 635, 647 A.2d 511 (1994) (quoting Restatement (Second) of Torts § 46, comment d). Cases in which Pennsylvania courts have found the alleged conduct sufficiently outrageous to state a cause of action include *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d Cir.1979) (defendant's team physician stated to the press that plaintiff was suffering from a fatal disease, although the physician knew the plaintiff was not suffering from the disease); *Papieves v. Lawrence*, 437 Pa. 373, 263 A.2d 118 (1970) (defendant struck and killed plaintiffs' son with his vehicle and secretly buried the body in a field where it was found two months later in a partially decomposed state and returned to the plaintiffs); and *Banyas v. Lower Bucks Hospital*, 293 Pa.Super. 122, 437 A.2d 1236 (1981) (defendant's employees intentionally fabricated records to suggest that plaintiff had killed a third party, leading to plaintiff's indictment for homicide).

In her Amended Complaint, Plaintiff alleges Defendants acted maliciously with the intention of putting her out of business, making it impossible for her to continue to practice her profession, and causing her to suffer severe emotional distress. Defendants tried to accomplish these ends by working to put Plaintiff out of business and, more specifically, the Tumans' made allegations in public and in a lawsuit that Plaintiff committed professional malpractice and misconduct, gave their daughter treatment she did not need for monetary gain and forced

their daughter to distance herself from her parents and to detach entirely from them.

■ Plaintiff argues that the determination of the outrageousness of conduct is a matter for the trier of fact. She cites *Bloom v. DuBois Reg'l Med. Ctr.,* 409 Pa.Super.Ct. 83, 99, 597 A.2d 671, 679–80 (1991), but that case dealt not with intentional infliction of emotional distress but with negligent infliction of emotional distress. The court noted that the determination of whether an act or failure to act constitutes negligence of any degree, in view of all the evidence, is a question for the jury. 409 Pa.Super.Ct. at 99, 597 A.2d at 679–80. In the case of intentional infliction of emotional distress, under Pennsylvania law, as interpreted by the Third Circuit, it is for the court to determine, as a preliminary matter, if the defendant's conduct is so extreme and outrageous as to permit recovery. *Cox v. Keystone Carbon Co.,* 861 F.2d 390, 395 (3d Cir.1988); *see also* Restatement (Second) of Torts § 46 comment h.

I conclude the conduct Plaintiff alleges is not sufficiently outrageous to sustain a cause of action for intentional infliction of emotional distress. In our society, it is not uncommon for people to try to force other people out of business and to make allegations in support of their efforts that they know, or should know, are untrue. Regrettable as this may be, it is usually not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46, comment (d). This case is not an exception to that generalization.

### E. COUNT FIVE—PUNITIVE DAMAGES

Count Five of the Amended Complaint makes a claim for punitive damages. Both Attorneys challenge this count and the Tumans join in arguments of Ginsberg.

### 1. Plaintiff's Entitlement to Punitive Damages

Rizzo claims Plaintiff is not entitled to punitive damages, even if the allegations of her Amended Complaint are true, because such damages are recoverable in a defamation action only if Plaintiff can demonstrate that he realized his statements were false or that he entertained serious doubts about the truth of his statements. He further states that a private plaintiff cannot recover punitive damages unless he demonstrates actual malice. He argues the allegations do not reflect any basis to believe Rizzo knew his conduct toward Plaintiff was based on erroneous information. (Rizzo Mem. in Supp. at 14–15.)

■ The Pennsylvania Supreme Court has held that "[a]ssessment of punitive damages are proper when a person's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton or reckless conduct." *SHV Coal, Inc. v. Continental Grain Co.,* 526 Pa. 489, 493, 587 A.2d 702, 704 (1991). Plaintiff alleges that Defendants acted willfully and with malice. Whether Defendants' actions support a claim for punitive damages involves factual issues that cannot properly be resolved in these Motions to Dismiss. *Tuman v. Genesis Assoc.,* 894 F.Supp. 183, 190 (E.D.Pa.1995); *Corbett,* 934 F.Supp. 680, 685 (E.D.Pa.1994) (denying summary judgment because the question whether defendants' behavior was sufficiently egregious to warrant such damages is an issue of fact for the jury). Therefore, that question will be left to the jury with respect to any substantive counts that survive the motions to dismiss.

### 2. Punitive Damages as a Separate Count

Ginsberg, joined by the Tumans, asserts that the count for punitive damages must be dismissed because it cannot stand alone as a claim.[4] He quotes the United States Court of Appeals for the Third Circuit as saying that, under Pennsylvania law "the right to punitive damages is a mere incident to a cause of action ... and not the subject of an action in itself." *Baram v. Farugia,* 606 F.2d 42, 46 (3d Cir.1979) (quoting *Hilbert v.*

---

**4.** Ginsberg mistakenly calls this count "Count Four" because he left Count Four out of his memorandum. He later joined Rizzo's Motion to Dismiss as to Count Four.

*Roth,* 395 Pa. 270, 276–77, 149 A.2d 648, 652 (1959)). He argues that the other counts state no valid causes of action, and, therefore, the claim for punitive damages cannot. In addition, he claims that, even if one or more of the other claims are allowed to go forward, the claim for punitive damages is incidental to the substantive claims and cannot be set out in a separate count. *Brennan v. Nat'l Tel. Directory Corp.,* 850 F.Supp. 331, 346–47 (E.D.Pa.1994) (dismissing separate count for punitive damages and allowing plaintiff to replead the count under the substantive claims).

■ Punitive damages are a form of relief and not the basis for a separate cause of action. Plaintiff therefore should have included her request for punitive damages in her prayers for relief in substantive counts of the Amended Complaint. *Butler v. Yamaha Motor Co.,* No. 89–1380, 1992 WL 170882, at *6 (E.D.Pa. July 9, 1992). However, the import of her pleading is clear and Defendants have not been misled or prejudiced by this technical error, and the error is not fatal to Plaintiff's recovering punitive damages. *Id.* Accordingly, Count Five of the Amended Complaint will be dismissed without prejudice to Plaintiff's right to seek punitive damages at trial, if appropriate under the remaining causes of action. *See Blair v. Ranger Ins. Co.,* No. 95–8025, 1996 WL 251879 (E.D.Pa. May 7, 1996).

### III. CONCLUSIONS

For reasons stated in the foregoing, Count One of the Amended Complaint, claiming wrongful use of civil proceedings, will be dismissed as to all Defendants; Count Two, claiming defamation, will be dismissed as to Defendants Rizzo and Ginsberg; Count Three, claiming tortious interference with prospective business relations will be dismissed as to Defendant Ginsberg; Count Four, claiming intentional infliction of emotional distress will be dismissed as to all Defendants; and Count Five, claiming punitive damages, will be dismissed as to all Defendants without prejudice to Plaintiff's right to seek such damages at trial, if appropriate under the surviving causes of action.

An appropriate Order follows.

### ORDER

**AND NOW,** this 11th day of March, 1997, upon consideration of Motions to Dismiss of Defendants Gary Ginsberg (Doc. No. 11), Joseph Rizzo (Doc. No. 10), and Kenneth and Joan Tuman (Doc. No. 20), the responses of Plaintiff Patricia Mansmann, and the responses and submissions thereto, IT IS HEREBY ORDERED that the Motion of Defendant Ginsberg (Doc. No. 11) is GRANTED in its entirety; the Motion of Defendant Rizzo (Doc. No. 10) is GRANTED IN PART and DENIED IN PART; and the Motion of Defendants the Tumans (Doc. No. 20) is GRANTED IN PART and DENIED IN PART, and more specifically:

1. The Motion of Gary Ginsberg (Doc. No. 11) is GRANTED with respect to all five counts of the Amended Complaint;

2. The Motion of Joseph Rizzo (Doc. No. 10) is GRANTED with respect to Counts One, Two, Four, and Five of the Amended Complaint and DENIED with respect to Count Three; and

3. The Motion of Kenneth and Joan Tuman (Doc. No. 20) is GRANTED with respect to Counts One, Four, and Five of the Amended Complaint and DENIED with respect to Counts Two and Three.

The counts of the Amended Complaint that are dismissed are as follows:

1. Count One is dismissed as to all Defendants;

2. Count Two is dismissed as to Defendants Rizzo and Ginsberg;

3. Count Three is dismissed as to Defendant Ginsberg;

4. Count Four is dismissed as to all Defendants; and

5. Count Five is dismissed as to all defendants without prejudice to Plaintiff's right to seek punitive damages at trial if appropriate under the surviving causes of action.

Plaintiff shall have 10 days after notice of this Order within which to file an Amended Complaint, and Defendants shall have 10

days after service of the Amended Complaint within which to file a responsive pleading.[1]

---

1. Plaintiff is cautioned to give serious consideration to whether she actually has a cause of action against a particular defendant in each count that has been dismissed as to that defendant before she attempts to file an amended pleading. A failure to do so could have Rule 11 implications.