OPINION
PER CURIAM.
Appellant Suresh Badrinauth appeals from the District Court’s April 2, 2008 order, as amended by its April 7, 2008 order, denying in part Defendants’ motion for summary judgment without prejudice. He further appeals from the District Court’s May 7, 2009 order granting Defendants’ renewed motion for summary judgment. We will affirm both rulings.
I.
In 1996, Badrinauth began employment with Nathan & Lewis Company (“NL”). In 2002, NL was acquired by Defendant Metropolitan Life Insurance Company (“MetLife”), and Badrinauth became an employee of MetLife until he was discharged from the company in June 2003. At some point between December 2001 and January 2002, Badrinauth met with Defendant Virgel Aquino[1] and a member of MetLife’s human resources department to discuss the transition of employees from NL to MetLife. At that time, Badrinauth was offered, and he accepted, a position as a Cashiering Manager in the BDRC. He reported directly to Robert Costello, who reported to Aquino.
Badrinauth alleges that in or around May 2002, he became aware that MetLife was not paying its employees overtime pay at the required rate. Badrinauth alleges that he raised the issue with Robert Costello on two occasions — in May 2002 and February 2003. He also alleges that he threatened to inform the Department of Labor (“DOL”) about the issue, but that he never reported the alleged violations to the DOL or any other agency. MetLife avers that it became independently aware of the concerns raised by certain employees regarding the calculation of overtime pay and issued supplemental payments to the affected employees.
Around May 2002, Badrinauth, along with his fiancée, opened a personal broker *322 age account with MetLife. In or around June 2003, during a routine review of employee accounts, Aquino noticed that Ba-drinauth had a negative balance in the account. Aquino also noticed other irregularities with the account. As a result of Aquino’s findings, MetLife commenced a formal investigation. The investigation revealed that Badrinauth had changed, without authorization, the address on the account from his fiancée’s home address to his own home address. Badrinauth then made a series of withdrawals from the account even though he was required to obtain written approval from his fiancée before doing so. Badrinauth’s fiancée testified at her deposition that she was not aware of all of the withdrawals that Badri-nauth made from the account. MetLife’s investigation also revealed that in February 2003 and May 2003, Badrinauth made several improper securities transactions involving the account.
In June 2003, Badrinauth met with Met-Life investigators as well as Aquino. When asked about the February 2003 and May 2003 transactions, Badrinauth admitted that he made the transactions and that he also circumvented proper procedure for requesting a change of address. Badri-nauth claimed, however, that his fiancée had authorized the withdrawals. At the conclusion of the meeting, Aquino suspended Badrinauth’s employment pending the conclusion of MetLife’s investigation. On June 30, 2003, Aquino terminated Badri-nauth’s employment due to Badrinauth’s ethical and policy violations.
Following his termination, Badrinauth brought a civil action in the District Court against MetLife and Aquino. In his February 2006 amended complaint, Badri-nauth raised state and federal claims of racial discrimination and a hostile work environment as well as a state law claim of wrongful termination against MetLife.[2] Badrinauth also asserted a claim of defamation against both MetLife and Aquino. In March 2007, MetLife and Aquino moved for summary judgment on all of Badri-nauth’s claims. Soon thereafter, Badri-nauth withdrew his claims of discrimination and a hostile work environment.
In an April 2008 decision,[3] the District Court dismissed Badrinauth’s defamation claim against MetLife and Aquino, but denied, without prejudice, MetLife’s motion for summary judgment on Badrinauth’s wrongful termination claim. In denying MetLife’s motion as to that claim, the District Court instructed MetLife that it could renew its motion after the New Jersey Supreme Court rendered a decision in Tartaglia v. UBS PaineWebber Inc., 197 N.J. 81, 961 A.2d 1167 (2008), a case which the District Court expected would provide guidance on a legal question at issue in Badrinauth’s case. Following the New Jersey Supreme Court’s ruling in Tantag-lia, MetLife renewed its summary judgment motion seeking dismissal of Badri-nauth’s claim for wrongful termination. In a May 7, 2009 decision, the District Court granted MetLife’s renewed motion for summary judgment, dismissing Badri-nauth’s only remaining claim. Badrinauth filed a timely appeal.[4]
*323 II.
We have jurisdiction over the appeal under 28 U.S.C. § 1291 and exercise plenary review over the District Court’s decision to grant summary judgment. McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir.2005). Summary judgment is appropriate when the “pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(e). A court reviewing a summary judgment motion must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party’s favor. Brewer v. Quaker State Oil Ref. Carp., 72 F.3d 326, 330 (3d Cir.1995). However, a party opposing summary judgment “must present more than just ‘bare assertions, conclusory allegations or suspicions’ to show the existence of a genuine issue.” Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir.2005).
As an initial matter, we conclude that the District Court appropriately denied, without prejudice, Defendants’ motion for summary judgment on Badrinauth’s claim of wrongful termination. Despite Badrinauth’s claim that the ruling improperly gave MetLife a second “nip at the apple,” the District Court’s ruling did not address the merits of his wrongful termination claim. Instead, as mentioned earlier, the District Court wished to wait until the New Jersey Supreme Court rendered a decision in Tartaglia before reviewing the grounds upon which MetLife sought dismissal of Badrinauth’s claim.
We further conclude that the District Court properly granted MetLife’s renewed motion for summary judgment on Badrinauth’s claim for wrongful termination. As mentioned, in Pierce, the New Jersey Supreme Court recognized a common law cause of action for wrongful termination when an employee is discharged contrary to a clear mandate of public policy. 417 A.2d at 512. Badrinauth claimed that he was wrongfully terminated in retaliation for identifying MetLife’s alleged failure to pay adequate overtime, and informing management that he would report the same to the DOL.
MetLife argued that Badrinauth’s Pierce claim should be dismissed because: (a) he failed to fulfill the reporting requirement set forth in Tartaglia;[5] and (b) he failed to establish a causal connection between his alleged reporting of MetLife’s overtime pay practices and his discharge from the company. Upon review of the record, the District Court concluded that there is a genuine issue of fact whether Badrinauth satisfied the reporting requirement set forth in Tartaglia.[6] Accordingly, the Court concluded that MetLife was not *324 entitled to summary judgment on that basis. However, as to MetLife’s argument that Badrinauth cannot establish a causal connection between his discharge and his alleged reporting of the overtime pay irregularities, the District Court agreed with MetLife that Badrinauth was wholly unable to establish causation.
Contrary to Badrinauth’s assertion, his Pierce claim cannot survive summary judgment simply because he may be able to satisfy the reporting requirement prescribed by Tartaglia. He must also, inter alia, “show that he was in fact discharged in retaliation for taking action in opposition to corporate action which violates a clear mandate of public policy.” See House v. Carter-Wallace, Inc., 232 N.J.Super. 42, 556 A.2d 353, 359 (1989). The District Court correctly determined that Badrinauth was unable to set forth any evidence suggesting he was discharged in retaliation for his alleged reporting of improper overtime pay practices. Conversely, there is overwhelming evidence suggesting that Badrinauth was discharged for violating company policy regarding his brokerage account.
Moreover, as the District Court aptly noted, there is a nearly four-month gap between Badrinauth’s threatened notification to the DOL and his discharge. A claim for wrongful termination under Pierce may be dismissed on grounds that the lack of temporal proximity between the protected activity and the adverse employment action belies a causal connection. Id. Summary judgment was therefore appropriate.
Accordingly, we will affirm the District Court’s rulings.

. During the period of Badrinauth's employment with MetLife, Aquino was the Chief Operating Officer of a Broker Dealer Resource Center ("BDRC”) in New Jersey, which was operated by MetLife.

.Badrinauth raised the claim pursuant to the New Jersey Supreme Court’s ruling in Pierce v. Ortho Pharm. Corp., 84 N.J. 58, 417 A.2d 505, 512 (1980), which recognized a common law cause of action for wrongful discharge when an employee is discharged "contrary to a clear mandate of public policy.”

. As noted earlier, the District Court amended its April 2, 2008 order in an order entered on April 8, 2008. The amended order clarified that Badrinauth previously withdrew his claims alleging racial discrimination and a hostile work environment.

. Badrinauth challenges the District Court's April 2008 order only with respect to the *323 Court's decision to deny, without prejudice, MetLife's motion for summary judgment on Badrinauth's wrongful termination claim. Accordingly, he has waived review of the District Court's summary judgment in that same order as to his defamation claim. See Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir.1993) (an issue is waived unless a party raises it in its opening brief).

. In Tartaglia, the New Jersey Supreme Court determined that it is not necessary for a plaintiff to file an external complaint of a violation of public policy with an outside agency in order to sustain a cause of action for wrongful discharge. 961 A.2d at 1184. Instead, notification to upper management of such a violation may be sufficient. Id.

. MetLife argues that the record entirely contradicts the District Court's determination that Badrinauth may have informed senior management about his concerns. Because we affirm the District Court's ruling on other grounds, we decline to review this aspect of the District Court’s ruling.