ZULICK, J.,
This case comes before the court on defendants Charles and Susan Rusbasan’s preliminary objections to plaintiff Lynann DeMaria’s first amended complaint. Ms. DeMaria filed a complaint seeking compensatory and punitive damages for wrongful termination of her employment, negligent infliction of emotional distress, and intentional infliction of emotional distress on May 8, 2014. After preliminary objections, Ms. DeMaria filed an amended complaint on September 4,2014, removing claims for attorney’s fees and negligent infliction of emotional distress. Ms. DeMaria alleges in her amended complaint that, (1) Mr. and Mrs. Rusbasan wrongfully terminated Ms. DeMaria from her position as a house manager when she refused to forge a physician’s signature on a prescription in June 2013 and (2) that Mrs. Rusbasan intentionally inflicted emotional distress upon Ms. DeMaria by repeatedly mentioning a past violent relationship with the Rusbasans’ neighbor and by indicating that Ms. DeMaria would be discharged if she were to mention the incident to anyone, including law enforcement.
*33 The Rusbasans filed preliminary objections on September 24,2014. All parties submitted memorandums, and arguments were held in this court on December 1, 2014.
DISCUSSION
The Rusbasans have filed several preliminary objections. The first is a challenge to this court’s subject matter jurisdiction arguing that subject matter jurisdiction is lacking as this is a dispute concerning less than $50,000 which under Monroe County local rules must go to compulsory arbitration pursuant to RR.C.R 1301 et. seq. Secondly, they argue that Ms. DeMaria has failed to state a claim for wrongful termination of employment a) because of the delay between the alleged incident and the termination, and b) because Ms. DeMaria was an independent contractor rather than an employee.[1] Third, the Rusbasans argue that Ms. DeMaria has failed to state a claim for intentional infliction of emotional distress, and lastly, that Ms. DeMaria’s request for punitive damages is not supported by her allegations.
The judiciary act provides for the Courts of Common Pleas’jurisdiction as follows:
§ 931. Original jurisdiction and venue
(a) General rule. — Except where exclusive original *34 jurisdiction of an action or proceeding is by statute or by general rule adopted pursuant to section 503 (relating to reassignment of matters) vested in another court of this Commonwealth, the courts of common pleas shall have unlimited original jurisdiction of all actions and proceedings, including all actions and proceedings heretofore cognizable by law or usage in the courts of common pleas.
42 Pa.C.SA §931.
“Jurisdiction is the capacity to pronounce a judgment of the law on an issue brought before the court through due process of law"Aronson v. Sprint Spectrum, LP., 767 A.2d 564, 568 (Pa. Super. 2001). The trial court has jurisdiction if it is competent to hear or determine controversies of the general nature of the matter involved. Id. Werner v. Plater-Zyberk, 799 A.2d 776, 789 (Pa. Super. 2002).
The Rusbasans object to the court’s exercise of subject matter jurisdiction in this case because the plaintiff has failed to state in the amended complaint the amount of damages sought in the action. The Rusbasans refer to Monroe County Local Rule 1301 which provides: “(a)ll civil cases where the amount in controversy (exclusive of interest and costs) shall be fifty thousand ($50,000.00) Dollars or less except those involving title to real estate, equity cases, mandamus, quo warranto and mortgage foreclosure, shall first be submitted to a board of arbitrators in accordance with Section 7361 of the judicial code, 42 Pa.C.S. § 7361.” Monroe County Local Rules, Rule 1301(1). This arbitration requirement, however, does not govern whether the court has subject matter jurisdiction, *35 which in fact it has. This preliminary objection will be treated as a request for a more specific pleading. The plaintiff will be directed to state whether her damages exceed $50,000 for purposes of the arbitration rule.
The Rusbasans have raised a demurrer to Ms. DeMaria’s wrongful termination and intentional infliction of emotional distress claims. The standard for demurrer is “whether, on the facts averred, the law says with certainty that no recoveiy is possible.” Santiago v. Pennsylvania Nat. Mut. Cas. Ins. Co., 613 A.2d 1235, 1238 (Pa. Super. 1992). “Where any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the demurrer.” Id.
The facts alleged in the amended complaint in support of the wrongful termination of employment claim are as follows. Ms. DeMaria began providing the Rusbasans house management services in 2006. Her duties included maintaining the Rusbasans’ residence, cleaning, paying bills, scheduling work, decorating their residence, and acting as their personal concierge and chauffeur. The Rusbasans terminated Ms. DeMaria’s services on August 21,2013.
On or about June 10, 2013, the Rusbasans’ daughter needed a medical prescription for the drug Ritalin filled by a pharmacy. Defendant Susan Rusbasan asked Ms. DeMaria to fill the prescription at the pharmacy. Ms. DeMaria presented the prescription slip to the pharmacist, but it was not signed by the physician, and she was unable to fill it. Ms. Rusbasan then requested her to forge the doctor’s signature. Ms. DeMaria refused, and *36 Ms. Rusbasan insisted, via voice mail, stating, “Please... have anyone do it. Just sign your name so that when the pharmacist sees it they will see that it’s not blank.” Plaintiffs amended complaint, ¶19. On June 11,2013, Ms. DeMaria sent an email to Ms. Rusbasan explaining why she believed it to be a federal offense to forge a doctor’s signature and why she would continue to refuse to sign the prescription. On August 21, 2013, Ms. DeMaria met with the Rusbasans at their annual meeting. The medical prescription incident was discussed and Ms. DeMaria was then terminated.
The Rusbasans contend that Ms. DeMaria has failed to state a cause of action for wrongful termination because of the length of time that passed from the alleged incident which formed the basis for termination and the actual firing. This objection has no merit.
Pennsylvania is an at-will employment state. Hennessy v. Santiago, 708 A.2d 1269, 1273 (Pa. Super. 1998). “[Exceptions [to at-will employment] fall into three categories: an employer (1) cannot require an employee to commit a crime, (2) cannot prevent an employee from complying with a statutorily imposed duty, and (3) cannot discharge an employee when specifically prohibited from doing so by statute.” Id.
While Pennsylvania courts have not adopted elements for wrongful termination, federal courts have analogized the action to retaliatory discharge under Title VII. See Landmesser v. United Air Lines, Inc., 102 F.Supp.2d 273, 277-78 (Pa E.D. 2000). The elements the federal court has predicted Pennsylvania will adopt include “(1) the *37 employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee’s protected activity; and (3) a causal link exists between the employee’s protected activity and the employer’s adverse action.” Id.
The Rusbasans argue that the passage of more than two months between the incident and Ms. DeMaria’s discharge prevents an inference of causation. Temporal proximity serves as an indicator of a causal connection between protected activity and an adverse employment action. See id.; Landmesser, 102 F.Supp.2d at n. 10, See Badrinauth v. Metlife Corp., 368 Fed.Appx. 320, 324 (3d Cir. 2010) (where four months passed: “(a) claim for wrongful termination ... may be dismissed on grounds that the lack of temporal proximity between the protected activity and the adverse employment action belies a causal connection.”). “Courts generally hold that if at least four months pass after the protected action without employer reprisal, no inference of causation is created.” Wood v. Bentsen, 889 F.Supp. 179 (E.D. Pa. 1995).
Here the Rusbasans’ annual meeting with Ms. DeMaria occurred in August. This was close enough in time to establish an inference of causation, especially when the complaint alleges that the prescription incident was discussed immediately before the Rusbasans fired Ms. DeMaria. This objection will be therefore be denied.
The Rusbasans further contend that the amended complaint does not state a cause of action for intentional infliction of emotional distress. Ms. DeMaria alleges that in 2009, Mrs. Rusbasan encouraged Ms. DeMaria to date *38 the Rusbasans’ neighbor, Sean Walter. Ms. DeMaria began a relationship with Mr. Walter, but after a few months, he became physically and mentally abusive. In January 2010, Mr. Walter burglarized Ms. DeMaria’s house and sliced her furniture with a knife. Ms. DeMaria reported this incident to the Rusbasans, who demanded that Ms. DeMaria not discuss the matter with anyone, including law enforcement, if Ms. DeMaria wished to keep her position as the Rusbasans’ house manager. Between 2011 and 2013, Ms. Rusbasan repeatedly reminded Ms. DeMaria of her previous relationship with Mr. Walter with the intent to cause Ms. DeMaria emotional distress. Additionally, between 2011 and 2013, Ms. Rusbasan, with intent to cause Ms. DeMaria emotional distress, threatened to terminate Ms. DeMaria’s employment if she discussed the incident regarding Sean Walter with anyone. Ms. DeMaria received counseling from a psychologist in 2011. As a result of Ms. Rusbasan’s conduct, Ms. DeMaria has allegedly experienced severe emotional distress including severe depression, anxiety, and post-traumatic stress disorder.
The superior court reviewed the tort action of intentional infliction of emotional distress in Reeves v. Middletown Athletic Ass’n, 866 A.2d 1115 (Pa. Super. 2004). There the court stated:
There remains some question as to whether the courts of this Commonwealth recognize a cause of action for intentional infliction of emotional distress. See, e.g., Hoy v. Angeione, 554 Pa. 134, 150-51 n. 10, 720 A.2d 745, 753-54 n. 10 (1998). However, our Supreme Court *39 has indicated that in order for a plaintiff to prevail on such a claim, he or she must, at the least, demonstrate intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff. Id., at 151, 720 A.2d at 754. In addition, a plaintiff must suffer some type of resulting physical harm due to the defendant’s outrageous conduct. Fewell v. Besner, 444 Pa. Super. 559, 664 A.2d 577, 582 (Pa. Super. 1995).
Id. at 1122.
“Outrageous or extreme conduct” for purposes of this tort has been defined as conduct that is “so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society.” Hoy, supra at 754. “[I]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by ‘malice,’ or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort.” Id. (quoting Restatement (Second) of Torts § 46, cmt. d (1965)).
The superior court in Hoy discussed examples of cases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress. These cases presented only the most egregious conduct. See e.g., Papieves v. Lawrence, 263 A.2d 118 (Pa. 1970) (defendant, after striking and killing plaintiff’s son with automobile, and after failing to notify authorities or seek medical assistance, buried body in a field where discovered two *40 months later and returned to parents (recognizing but not adopting section 46)); Banyas v. Lower Bucks Hospital, 437 A.2d 1236 (Pa. Super. 1981) (defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide); Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265 (3d Cir. 1979) (defendant’s team physician released to press information that plaintiff was suffering from fatal disease, when physician knew such information was false). Hoy, 720 A.2d at 754; Swisher v. Pitz 868 A.2d 1228, 1230-1231 (Pa. Super. 2005).
It is for the court to determine in the first instance whether a defendant’s conduct “may reasonably be regarded as so extreme and outrageous to permit recovery.” Johnson v. Caparelli, 625 A.2d 668, 671 (Pa. Super. 1993). A jury question is created here as to whether the acts of Susan Rusbasan alleged in the amended complaint rise to the level of extreme or outrageous conduct required for this tort. Ms. DeMaria alleges that Ms. Rusbasan threatened to terminate her job if she told anyone, including law enforcement about Walter’s conduct, which she alleges included physical abuse, burglarizing her apartment and slicing her furniture with a knife. Amended complaint, ¶¶50, 51.
However, the complaint does not allege that Ms. DeMaria sought medical treatment due to the alleged intentional infliction of emotional distress. Pennsylvania cases have additionally required evidence of medical treatment for physical harm due to the emotional distress. Kazatsky v. King David Memorial Park, Inc., 527 A.2d *41 988, 995 (Pa. 1987) (“Given the advanced state of medical science, it is unwise and unnecessary to permit recovery to be predicated on an inference based on the defendant’s ‘outrageousness’ without expert medical confirmation that the plaintiff actually suffered the claimed distress.”); Hart v. O’Malley, 647 A.2d 542, 554 (Pa. Super. 1994) (“[I]t is clear that in Pennsylvania, in order to state a claim under which relief can be granted for the tort of intentional infliction of emotional distress, the plaintiffs must allege physical injury.”); Johnson v. Caparelli, 625 A.2d 668, 671 (Pa. Super. 1993) (“The Supreme Court has further added the requirement of physical injury or harm in the event that § 46 is to be adopted.”). The physical injury requirement does not have to be severe; in Johnson v. Caparelli, the appellants suffered physical harm including, “headaches, upset stomach, involuntary muscle tension, physical pain, and nervousness” related to the news that their son had been a victim of sexual assault. Johnson, 625 A.2d at 672.
Ms. DeMaria does not allege that the therapy she received in 2011 was due to Ms. Rusbasan’s alleged behavior. She also does not allege that she sought medical treatment for physical harm resulting from the emotional distress. A plaintiff pleading the existence of emotional distress must substantiate that he or she actually suffered the claimed distress with expert medical confirmation. Kazatsky v. King David Memorial Park, Inc., 527 A.2d 988 (Pa. 1987), Hunger v. Grand Cent. Sanitation, 670 A.2d 173, 177-178 (Pa. Super. 1996). The preliminary objection as to Ms. DeMaria’s failure to state a claim for intentional infliction of emotional distress will therefore be sustained.
*42 Finally, the Rusbasans argue that Ms. DeMaria’s request for punitive damages is scandalous or impertinent matter, pursuant to Pennsylvania Rule of Civil Procedure 1028(1) (2). “Punitive damages may be awarded for conduct that is outrageous because of the defendant’s evil motive or reckless indifference to the rights of others.... As the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant’s actions are so outrageous as to demonstrate willful, wanton, or reckless conduct.” Hutchison ex rel. Hutchison v. Luddy, 870 A.2d 766, 770 (Pa. 2005). Furthermore, “this Court has stressed that, when assessing the propriety of the imposition of punitive damages, the state of mind of the actor is vital. The act, or the failure to act, must be intentional, reckless, or malicious.” id.
If proven true, Ms. Rusbasan’s requirement that Ms. DeMaria forge the signature of a physician in order to remain employed by the Rusbasans could certainly be considered willful or wanton. Punitive damages in this case are not scandalous or impertinent, since the alleged incident is one that is against public policy and should be deterred. This preliminary objection will be denied.
ORDER
And now, this 13th day of January, 2015, upon consideration of defendants Charles and Susan Rusbasan’s preliminary objections and the briefs and arguments of both parties, it is ordered as follows:
1. Defendants’ objection to this court’s subject matter jurisdiction is denied. However, the request for a more *43 specific complaint is granted. Plaintiff shall file an amended complaint stating whether she seeks damages in excess of $50,000.00.
2. Defendant’s demurrer to plaintiff’s claim for wrongful termination from employment is denied.
3. Defendants’ demurrer to plaintiff’s claim for intentional infliction of emotional distress is sustained.
4. Defendants’ preliminary objection to the request for punitive damages is denied.
5. Plaintiff is given twenty days to file a second amended complaint.

. Defendants, in a footnote in their brief, argue that the wrongful termination count should be dismissed as the plaintiff was an independent contractor. The amended complaint is not specific as to whether plaintiff was an employee or an independent contractor, and this court will not decide this issue on preliminary objections when the only place defendants address it is in a footnote in their brief.